Brent T. Robinson, Esq. (ISB No. 1932)
W. Reed Cotten, Esq. (ISB No. 8976)
ROBINSON & TRIBE
Attorneys at Law
615 H Street
P.O. Box 396
Rupert, ID  83350-0396
Telephone No. (208) 436-4717
Facsimile No. (208) 436-6804
Email Address:  btr@idlawfirm.com
Idaho State Bar No. 1932

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| In Re:<br><br>PARKINSON SEED FARM, INC.,<br>an Idaho corporation,<br><br>Debtor. | Case No. 18-40412-JMM<br>(Chapter 11)<br><br>MOTION FOR EMERGENCY AND CONTINUING USE OF CASH COLLATERAL |
|---|---|

COMES NOW the Debtor by and through its attorney, Brent T. Robinson of the firm Robinson & Tribe, and moves the Court for an order authorizing Debtor in possession the emergency use of cash collateral and to incur secured debt pursuant to 11 USC § 363. This motion is based upon the following:

1. That Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code on May 18, 2018, and continues in possession of its property and the operation of its business as a Debtor in possession.

2. The Debtor acknowledges and agrees that all income generated from both pre-petition and post-petition crops, without limitation, is and for all purposes shall be deemed to constitute cash collateral to the extent provided by Bankruptcy Code § 522(b), under Bankruptcy Code § 363(a) and (c)(2), and properly perfected under Bankruptcy Code § 552(b) and any other applicable law.

3. The Debtor has submitted a proposed budget with this Motion, in which the Debtor estimates in good faith that its gross income will total approximately $5,651,789.00 ("**Budget**"), which is generated from 2017 and 2018 crop production.

4. To the best of Debtor's knowledge, information, and belief, the only secured creditor claiming a lien against crops is KeyBank, NA. As of the date of the Petition the amount owed to KeyBank, NA is the approximate sum of $17,436,483.00, and it is the cash collateral of said creditor that is sought to be used by the Debtor.

5. In the course of Debtor's operation, Debtor has collected or will collect those sums reflected on the list attached hereto as Exhibit "A" and incorporated herein by reference.

6. The proceeds from the sale of crops will be used to pay the operating expenses set forth in the budget attached hereto as Exhibit "B".

7. The Debtor will sequester all income generated from the operation of the Debtor's business and use of the Collateral in a segregated bank account ("Cash Collateral Trust Account") in accordance with Bankruptcy Code § 363(c)(4). The Debtor shall at all times during the pendency of this case keep all Cash Collateral, whether previously or hereafter collected, and any and all other Cash Collateral that comes into the Debtor's possession, custody, or control, together with all proceeds, products, or profits thereof, separate and distinct from all other property of the Debtor and of the Debtor's bankruptcy estate.

8. The Debtor does not have sufficient income to continue its operation without the use of cash collateral and by this motion seeks authorization to use cash collateral on an emergency basis to pay the following operating expenses:

| | |
|---|---:|
| Labor – General | $ 18,000.00 |
| Labor – Other | 60,000.00 |
| Payroll Taxes | 20,000.00 |
| Chemicals | 57,000.00 |
| Fertilizer | 356,000.00 |
| Fuel / Lubricants | 65,000.00 |
| Repairs & Maintenance | 90,000.00 |
| Seed | 345,000.00 |
| Water & Power | 290,000.00 |
| Owner Draw | 12,000.00 |
| Office & Telephone | 14,000.00 |
| Promotion & Travel | 3,000.00 |
| Property Taxes | 30,000.00 |
| Casualty Insurance | 30,000.00 |
| Professional Fees | 12,000.00 |
| Total: | $ 1,402,000.00 |

9. The Debtor also seeks to the use of cash collateral on a continuing basis to pay the operating expenses as provided in the line item budget attached hereto as Exhibit "B" through April 2019.

10. If the Debtor is not permitted to use cash collateral to pay ongoing operating expenses on an emergency and continuing basis, the Debtor will be unable to continue its operation and will be unable to fund the Plan it will propose hereafter. All of the expenses sought to be paid are necessary in order for the Debtor to continue its operation. If the Debtor is not allowed to use cash collateral on a continuing basis, the Debtor will suffer irreparable harm, which will be detrimental not only to the Debtor, but also to all creditors and other parties in interest.

11. The Debtor's projected income from the sale of crops in 2018 is included in the line-item budget attached hereto as Exhibit "B".

12. As additional security and in an effort to provide adequate protection for the liens and security interest of KeyBank, NA, the Debtor upon entry of and order approving the use of Cash Collateral hereby grants KeyBank, NA continuing lien in and to the Crops and all proceeds derived from those Crops as well as a lien in any and all crops generated and grown during the 2018 crop season, and all proceeds thereof (collectively "**Collateral**") received before, on or after the date of the commencement of its Chapter 11 Case (the "**Post-Petition Liens**"), to secure any and all obligations owed by the Debtor to KeyBank, NA, in the same priority and to the extent it existed pre-petition;

13. If the Court determines the adequate protection proposed by the Debtor is insufficient, then the Debtor requests that the Court make a determination as to the amount the Debtor should pay as adequate protection.

14. All agreements, security interests, and liens, including but not limited to the Post-Petition Liens, contemplated by this Amended Motion, are effective and perfected without further filing by KeyBank, NA, or compliance with state or federal law. KeyBank, NA will not be required to file financing statements or other documents in any jurisdiction or to take any other action in order to perfect the security interests and liens granted to it under and pursuant to this Motion and any Order approving the same. If KeyBank, NA, in its sole discretion, chooses to file

or record such financing statements or otherwise confirm perfection of such security interests and liens, all such financing statements, assignments, or similar documents shall promptly be executed by the Debtor upon request of KeyBank, NA;

15. The Debtor shall maintain, keep, and preserve the Collateral and all of the terms of the Security Agreements and other credit documents (except any terms which are inconsistent with the terms of this Motion and/or the Bankruptcy Code, if any) and agrees further to use its best effort in collecting all income generated by operation of the Debtor's business and by use of the Collateral and in maximizing the Debtor's profitability;

16. KeyBank, NA shall have access, with reasonable notice, to the Debtor's business premises to review and evaluate the physical condition of the Collateral and inspect the financial records and all other records of the Debtor concerning its operations, and for review of the Debtor's overall financial condition, the expenditure of funds generated from the Debtor's operations, the accrual of expenses relating thereto and any and all other records reasonably relating to the operations of the Debtor; and

17. Except to the limited extent modified by a confirmed Plan, all of the terms of the agreements between the Debtor and KeyBank, NA shall remain in full force and effect.

18. The Debtor shall provide the KeyBank, NA's counsel, and the United States Trustee, via fax or email, the following financial information and reports:

    a. Not later than 120 days after and at the end of Debtor's fiscal year 2017, and each fiscal year thereafter, combined financial statement of the Debtor on a consolidated and consolidating basis with all of Debtor's subsidiaries (if any), to include a balance sheet, income statement, statement of cash flows, statement of member's equity, management report, reviewer/auditor's report, and all supporting schedules and footnotes;

    b. Not later than 20 days after and as of the end of each month, a financial statement of Debtor, prepared by Debtor, to include an income statement and balance sheet;

    c. Not later than 20 days after and as of the end of each month, a one

month rolling cash flow forecast, with actual results compared to the previous month's forecast;

    d.    Not later than 20 days after and as of the end of the last business day of each month, a current position report of all crops on hand and sold during the month.

    e.    Not later than 20 days after and as of the end of the last business day of each month, accounts receivable and accounts payable aging reports;

    f.    Financial reports prepared by or received by Debtor's accountant within one day of when received by Debtor;

    g.    A copy of all reports filed with the U.S. Trustee on the same day the reports are filed with the U.S. Trustee;

    h.    Such other information as KeyBank, NA or the U.S. Trustee may reasonably request.

19.    The Debtor shall provide KeyBank, NA with proof of adequate insurance coverage for its collateral and the Debtor's operations.

20.    KeyBank, NA, expressly reserves any rights they have under Section 507(b) of the Bankruptcy Code to seek super priority administrative expense claim in the event the proposed adequate protection for the use of cash collateral is not sufficient.

21.    As best as it can be determined by the Debtor based upon current market values, the estimated fair market value of crops, livestock, livestock products, real property, and equipment in which KeyBank, NA has a lien is in excess of the amount of the indebtedness owed and the amount of cash collateral the Debtor seeks to use.

22.    In the event any creditors' names appear on any checks received from the sale of crops, said parties should be required to endorse the same.

23.    The proceeds from the sale of crops will be used to pay operating expenses.

24.    The Debtor does not have sufficient income to continue its operation without the use of cash collateral and by this motion seeks authorization to use cash collateral on a continuing basis to pay the operating expenses set forth in the cash flow budget attached hereto as "**Budget**" through April 2019.

MOTION FOR EMERGENCY AND CONTINUING
USE CASH COLLATERAL -5

25. This motion is made in accordance with the guidelines set forth in the local bankruptcy rules pertaining to motions for use of cash collateral and does not contain any provisions that the Court normally would not approve.

WHEREFORE, Debtor in possession prays that this Court issue an order granting Debtor the right to use cash collateral on an emergency and continuing basis, namely, proceeds from the sale of crops to pay the ongoing expenses and set forth in the budget that is attached hereto and by reference made a part hereof, and that the Debtor be entitled to do so until further Order of this Court. Debtor further request that all parties named on checks be required to endorse all checks received from the sale of crops to the extent of the cash collateral the Court authorized the Debtor to use.

DATED this 16th day of May 2018.

ROBINSON & ASSOCIATES

By: /S/ W. Reed Cotten      for
Brent T. Robinson
Attorneys for Debtor