Jeffrey C. Misley, Idaho State Bar No. 11178
Tab Wood, Idaho State Bar No. 10575
SUSSMAN SHANK LLP
1000 S.W. Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
Email:  jmisley@sussmanshank.com
          twood@sussmanshank.com

    Attorneys for Plan Administrator of Parkinson Seed Farm, Inc.


UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re | Case No. 18-40412-JMM |
| | (Chapter 11) |
| PARKINSON SEED FARM, INC., an Idaho corporation, | |
| Debtor. | |

**NOTICE OF PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE  AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT**

**No Objection.**  Pursuant to FRBP 6004, 2002(a), and LR 2002.1, the Court may consider granting an order without further notice, at the hearing, unless a party in interest files and serves an objection by **January 23, 2023**. If an objection is not timely filed and served, the Plan Administrator will submit an order and the Court may consider any objection waived and the motion may be granted at the hearing.

**Objection.** Any objection shall set out the legal and/or factual basis for the objection. A copy of the objection shall be served on the Plan Administrator, Matt McKinlay, 13601 West McMillan Road, Suite 102, PMB 320, Boise, Idaho 83713, and a copy to Jeffrey C. Misley, attorney for the Plan Administrator, Sussman Shank LLP, 1000 S.W. Broadway, Suite 1400, Portland, Oregon 97205, with email copy to jmisley@sussmanshank.com.


Page 1 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

## MOTION

Matt McKinlay of CFO Solutions, LLC, dba Advanced CFO, duly appointed Plan Administrator (the "Plan Administrator"), by and through its undersigned counsel, moves (this "Motion") for the entry of an Order Authorizing Sale of Membership Interests Free and Clear of All Liens, Claims, and Interests and Approving Settlement Agreement.  Consequently filed herewith in support of this Motion is the Declaration of Matthew R. McKinlay (the "McKinlay Dec.").  In support of the Motion, the Plan Administrator states as follows:

### PROCEDURAL HISTORY

1.    **Chapter 11 Filing**. On May 15, 2018, the Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code.

2.    **Confirmation of Chapter 11 Plan**. On March 3, 2020, an order was entered confirming SummitBridge National Investments VI LLC's Amended Chapter 11 Plan of Liquidation Dated December 11, 2019 (the "Plan").[1] McKinlay Dec. at ¶ 3.

3.    **Appointment of Plan Administrator**. The Plan appoints Matt McKinlay of CFO Solutions LLC as Plan Administrator for the purpose of administering and liquidating the assets of this estate. *Id*.

4.    **Authority of Plan Administrator**. Among other things, the Plan authorizes and directs the Plan Administrator to liquidate all remaining Assets of the Reorganized Debtor.  The Plan also provided that those "Assets and any proceeds thereof vested in the Reorganized Debtor free and clear of all liens, Claims, Interests, and any other rights, obligations, or interests of any Person" on the Effective Date. The Plan Administrator is the sole officer and director of the Reorganized Debtor.

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meaning set forth in the Plan.

Page 2 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

## SALE OF MEMBERSHIP INTERESTS

5.    **Description of Membership Interests**. The membership interests to be sold are Parkinson Seed Farm, Inc.'s membership interests in Idaho Springs Water Company, LLC, an Idaho limited liability company ("Idaho Springs"), and DCB Holdings, LLC, an Idaho limited liability company ("DCB") (the Reorganized Debtor's membership interests in Idaho Springs and DCB are referred to as the "Membership Interests"). The Membership Interests became Assets of the Reorganized Debtor to be administered by the Plan Administrator through a settlement agreement between the Plan Administrator and the Chapter 7 Trustee for the Bankruptcy Estate of Dirk W. and Robyn Parkinson in Case No. 20-40698 [ECF No. 845] (the "Membership Settlement"), which was approved by this Court by order on December 3, 2021 [ECF No. 849].

6.    **Investigation and Negotiation**. After court approval of the Membership Settlement, the Plan Administrator hired an appraiser to value the membership interests and sought potential buyers. After investigation and negotiation, the Plan Administrator determined that Craig Bartschi and Bryan Bartschi are the buyers likely to provide the greatest value to the Reorganized Debtor.  McKinlay Dec. at ¶ 6-7. Craig Bartschi owns the other membership interests in Idaho Springs. Craig Bartschi and Bryan Bartschi (the "Bartschis") claim to hold 29% and 20% respectively of the membership interest in DCB. The Plan Administrator then engaged in in-depth negotiations with the Bartschis and Bartschis' counsel that resulted in the proposed sale. *Id.*

7.    **Proposed Sale Terms**. The Plan Administrator proposes to sell the Membership Interests on the terms substantially similar to those set out in the Purchase and Sale Agreements attached hereto as Exhibit A. Those terms include: $300,000 for the Reorganized Debtor's interest in Idaho Springs and $900,000 for the Reorganized Debtor's interest in DCB for a total sale price of $1.2 million. The parties also anticipate a distribution of excess cash from Idaho Springs and DCB before closing, which the Plan Administrator expects will be no less than

Page 3 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

$300,000. The sale will be subject to notice to creditors and any overbid.

8. **Sale Free and Clear of Liens, Claims and Interests**. The Plan Administrator requests that the sale order provide that any and all liens against the Membership Interests (if any) attach to the proceeds of the sale in the same order and with the same priority as such liens had with respect to the assets to be sold immediately before the sale, with net proceeds to be paid to creditors as provided by the Plan. McKinlay Dec. at ¶ 6.

9. **Sale in the Best Interest of Estate**. In the Plan Administrator's business judgment, the sale of the Membership Interests at this time is in the best interest of this estate and creditors. The sale will provide additional funds to increase distributions to creditors. *Id.* at ¶ 7.

10. **Authority to Sell Free and Clear**. The Plan authorizes and directs the Plan Administrator to liquidate and sell the bankruptcy estate's Assets free and clear. Specifically, paragraph 6.6(b) of the Plan and Sections 1123(a)(5)(D) and 363 of the United States Bankruptcy Code authorize this Court after notice to approve the sale of the Membership Interests free and clear of liens, claims, and interests.

11. **Distribution of Net Sale Proceeds**. The Membership Settlement provides that SummitBridge National Investments VI LLC, Compeer Financial, FCLA, and Deere Credit, Inc. (all secured creditors in this case and creditors in the Chapter 7 Bankruptcy of Dirk W. and Robyn Parkinson) will receive the first 5% of gross sale proceeds of the sale of the Membership Interests. The remaining proceeds will be distributed in accordance with the Plan. Plan, Section 6.6(b). McKinlay Dec. at ¶ 8.

12. **Overbid Procedures**. The Plan Administrator requests that any person or entity wishing to submit an overbid for the Membership Interests be a "Qualified Bidder." To be deemed a Qualified Bidder, a party must:

(i)    timely file an objection to this Motion;

(ii)    tender to the Plan Administrator, by no later than 5:00 p.m. on January 23, 2023, a

Page 4 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

deposit in the amount of $100,000 in certified funds, payable to "Matthew McKinlay, Plan Administrator." The deposit shall be held in escrow in a segregated account of the Plan Administrator pending the closing of the sale. The full amount shall be forfeited as liquidated damages if a party is ultimately a successful bidder and fails to close the transaction because of a breach or failure to perform. Should the Qualified Bidder be the winning bidder, the deposit will be retained by the Plan Administrator as part of a nonrefundable deposit for application against the purchase price at the closing or returned to the Qualified Bidder if the Court does not approve the sale due to no fault of the successful bidder. The certified funds of unsuccessful bidders will be returned to those parties after the close of the sale;

(iii)   Provide proof of funds satisfactory to the Plan Administrator evidencing that the bidder has the financial wherewithal to timely consummate the purchase of the Membership Interests; and

(iv)   Certify to the Plan Administrator in writing that the bidder is bidding for the Membership Interests of both DCB and Idaho Springs and willing and able to purchase the Membership Interests on the same terms (other than price) as in Exhibit A.

If an objection to the proposed sale is filed and the Court conducts an auction on the sale of the Membership Interests, bid amounts shall be in increments of not less than 10% of the sale price contemplated herein ($120,000).

Nothing herein shall preclude the Bartschis from bidding at any Court ordered auction. All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the auction and sale of the Membership Interests.

## SETTLEMENT OF CLAIMS

13.   **Settlement and Compromise**.  In conjunction with the proposed sale, the Plan

Page 5 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

Administrator and the Bartschis have agreed to settle all claims between them, the Bankruptcy Estate of Parkinson Seed Farm, Inc., Idaho Springs, and DCB, including the Plan Administrator's claim for a distribution as a member of DCB and Idaho Springs from those entities' excess cash. After negotiation, the Plan Administrator and the Bartschis have agreed to settle their claims on terms substantially similar to those set out in the Settlement Agreement attached hereto as Exhibit B. Those terms include the proposed sale of the Membership Interests described herein which, as noted above, will generate $1.2 million for the estate.  In addition, and as part of the settlement, the Plan Administrator will receive $362,903.73 from DCB and Idaho Springs and joint global and mutual releases of all claims as between the Plan Administrator, the Bankruptcy Estate of Parkinson Seed Farm, Inc., Idaho Springs, DCB, and the Bartschis. A condition of entering the Settlement Agreement shall be that the proposed sale be closed within 75 days from the filing of this motion.

14.    **Authority for Approving Compromise**. The Court has authorization to approve the Plan Administrator's settlement and compromise pursuant to FRBP 9019(a).  The Court has routinely applied the four-part test set forth in *In re A&C Properties*, 784,F.2d 1377, 1381 (9th Cir. 1986), *cert. denied* 479 U.S. 854, 107 S. Ct. 189, 93 L. Ed. 2d 122 (1986), which requires the Court to consider (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interests of the creditors and a proper deference to their reasonable views.

15.    The Court has historically given trustees wide latitude to settle disputes. See *In re Marples*, 266 B.R. 202 (Bankr. D. Idaho 2001); *In re Smith*, 349 B.R. 28 (Bankr. D. Idaho 2005). The movant carries the burden of persuasion to show the settlement is fair and equitable. *Id*. Here, the Plan Administrator submits that this settlement is fair and equitable; is in the best interests of the bankruptcy estates; and represents the best possible opportunity for payment to creditors in this case. The Plan Administrator submits that this settlement is fair and reasonable

Page 6 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

under the "four factors" test.

16.     **Probability of Success**. It is in the best interest of the Chapter 11 bankruptcy estate that the proposed compromise and settlement be approved. The proposed settlement mitigates the inherent uncertainty involved in litigation. Here, the Plan Administrator believes it is entitled to a distribution from the excess cash being held by DCB and Idaho Springs. However, the Plan Administrator's entitlement to such distributions and their amount could be contested in litigation. The Plan Administrator and the Bartschis wish to resolve that uncertainty without incurring additional expenses in legal fees and time.

17.     **Difficulties in Collection**. A settlement has been reached that would alleviate any difficulties with collection of a judgment.

18.     **Complexity, Expense, Inconvenience, and Delay in Litigation**. If the Court were to approve the proposed settlement, there would be no further proceedings required. However, in the event the proposed settlement is not approved, then the Plan Administrator and Bartschi would be put to further expense, inconvenience, and delay that would result from litigation.

19.     **Best Interest of the Creditors of the Bankruptcy Estate**. This settlement is in the best interest of the creditors of both bankruptcy estates because it will allow funds in excess of $1.5 million to be received to go towards a pool from which the Chapter 11 bankruptcy estate could make distributions to creditors while avoiding expenditure of unnecessary fees and costs.

//

//

//

//

//

//

Page 7 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

WHEREFORE, the Plan Administrator prays that an order be entered (a) granting the Motion and approving the sale of the Membership Interests free and clear of liens, (b) authorizing the Plan Administrator to deliver the Membership Interests free and clear of all liens, claims, and interests to the purchaser(s), (c) approving the settlement as described herein and (d) for all other relief that is appropriate under the circumstances.

Dated this 5th day of January, 2023.

SUSSMAN SHANK LLP

*s/ Jeffrey C. Misley*

By _____
Jeffrey C. Misley, Idaho State Bar No. 11178
jmisley@sussmanshank.com
Attorneys for Plan Administrator

**\*24172-006\MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS (04049641);4**

Page 8 - PLAN ADMINISTRATOR'S MOTION FOR ORDER AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT

## MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT

**THIS MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT** (this "<u>Agreement</u>") is made and entered into effective as of _____, 2022 (the "<u>Effective Date</u>"), by and between PARKINSON SEED FARM, INC., an Idaho corporation (the "<u>Seller</u>"), acting by and through Matthew R. McKinlay (of CFO Solutions, L.C., dba Advanced CFO) in his capacity as the duly appointed Plan Administrator (the "<u>Plan Administrator</u>") under that certain SummitBridge National Investments VI LLC's Amended Chapter 11 Plan of Liquidation entered December 11, 2019, in the matter of In re Parkinson Seed Farm, Inc., an Idaho corporation, Debtor, United States Bankruptcy Court, District of Idaho (the "<u>Bankruptcy Court</u>"), Case No. 18-40412-JMM (the "<u>Parkinson Seed Bankruptcy</u>"), CRAIG BARTSCHI, an individual, and BRYAN BARTSCHI, an individual (Craig Bartschi and Bryan Bartschi, together, the "<u>Buyer</u>").

## RECITALS

A.    As of the Effective Date, IDAHO SPRINGS, LLC, an Idaho manager-managed limited liability company formerly known as Snowy Peak, LLC (the "<u>Company</u>"), has two (2) members, namely Buyer, and Dirk Parkinson ("<u>Dirk</u>").

B.    In connection with providing a governance structure for the Company, the then members of the Company entered into that certain Operating Agreement of Snowy Peak, LLC dated November 5, 1998 (as amended, the "<u>Operating Agreement</u>").

C.    Pursuant to the terms of the Operating Agreement, the Company has only one class of membership interest in the Company (the "<u>Membership Interests</u>"), which Membership Interests have both voting and economic rights in the Company. As of the Effective Date, Dirk claims a 70% Membership Interest in the Company (Dirk's claimed 70% Membership Interest in the Company is herein after referred as "<u>Dirk's Membership Interest</u>"). The Buyer owns the remaining Membership Interest in the Company.

D.    On September 4, 2020, Dirk and his wife, Robyn Parkinson, filed for relief under Chapter 11 of the United States Bankruptcy Code, in the matter of In re Dirk W. Parkinson and Robyn Parkinson, Debtors, United States Bankruptcy Court, District of Idaho, Case No. 20-40698 (the "<u>Dirk and Robyn Bankruptcy</u>"). On April 28, 2021, the Dirk and Robyn Bankruptcy was converted to a Chapter 7 case and Sam Hopkins was appointed as the Bankruptcy Trustee (the "<u>Trustee</u>") in the Dirk and Robyn Bankruptcy.

E.    On or about October 7, 2021, the Plan Administrator in the Parkinson Seed Bankruptcy and the Trustee in the Dirk and Robyn Bankruptcy entered into that certain Settlement Agreement dated October 7, 2021 (the "<u>Settlement Agreement</u>"), pursuant to which (i) the Trustee in the Dirk and Robyn Bankruptcy agreed that Dirk's Membership Interest in the Company shall be administered by the Plan Administrator as part of the Parkinson Seed Bankruptcy, and (ii) the Trustee in the Dirk and Robyn

**Page 1 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Bankruptcy agreed to cooperate with the Plan Administrator in the Parkinson Seed Bankruptcy as to administration of Dirk's Membership Interest in the Company, including executing such documents as may be necessary to complete the terms of the settlement and any subsequent sale, transfer or assignment of Dirk's Membership Interest in the Company.

F.     On November 11, 2021, the Plan Administrator in the Parkinson Seed Bankruptcy and the Trustee in the Dirk and Robyn Bankruptcy filed a Stipulated Motion for Order Approving Settlement Agreement in the Parkinson Seed Bankruptcy, seeking an Order approving the Settlement Agreement. On December 7, 2021, the Bankruptcy Court in the Parkinson Seed Bankruptcy entered an Order Approving Stipulated Settlement Motion (the "Settlement Agreement Order"), pursuant to which the Settlement Agreement was approved in the Parkinson Seed Bankruptcy. On December 13, 2021, an Amended Order Approving Stipulated Settlement Motion was also entered by the bankruptcy court in the Dirk and Robyn Bankruptcy.

G.     As provided in this Agreement, the Plan Administrator intends to file a motion with the Bankruptcy Court in the Parkinson Seed Bankruptcy (the "Sale Motion") seeking an Order from the Bankruptcy Court (the "Sale Order") approving the sale of Dirk's Membership Interest to Buyer.

H.     The Plan Administrator and Buyer have reached an agreement pursuant to which Seller will sell to Buyer, and Buyer will purchase from Seller, Dirk's Membership Interest (the Sale Transaction") for the purchase price of Three Hundred Thousand and No/100 Dollars ($300,000.00) (the "Purchase Price"), unless a higher Purchase Price is agreed to by Buyer and approved by the Bankruptcy Court in the Sale Order in connection with the Sale Motion.

I.     Seller and Buyer desire to enter into this Agreement to set forth the terms and conditions on which Seller will sell to Buyer, and Buyer will purchase from Seller, Dirk's Membership Interest if the Sale Transaction is approved by the Bankruptcy Court's entry of the Sale Order.

## AGREEMENT

**NOW, THEREFORE,** for good and valuable consideration as provided for in this Agreement, the parties hereby agree as follows:

## SECTION 1. INCORPORATION OF RECITALS

The Recitals to this Agreement are hereby incorporated into and made a part of this Agreement.

## SECTION 2. PURCHASE OF DIRK'S MEMBERSHIP INTEREST; EXCLUDED LIABILITIES; PURCHASE PRICE AND PAYMENT OF PURCHASE

**Page 2 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

### PRICE; EARNEST MONEY DEPOSIT; SALE MOTION AND SALE ORDER; PRE-CLOSING DISTRIBUTION OF CASH

**2.1    Purchase of Dirk's Membership Interest.** Subject and pursuant to the terms and conditions of this Agreement, Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, Dirk's Membership Interest. Subject and pursuant to, and to the extent provided in, the Sale Order, Buyer's purchase of Dirk's Membership Interest will be free and clear of any pledge, lien, charge, security interest, claim, or other encumbrance.

**2.2    Excluded Liabilities**. Buyer shall not assume and shall not be responsible to pay, perform, or discharge any liabilities of Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, or the Dirk and Robyn Bankruptcy estate of any kind or nature whatsoever (the "Excluded Liabilities"). The Excluded Liabilities do not include any obligation or liability of the Company. The Excluded Liabilities shall include, without limitation, the following:

**2.2.1**    Any costs or expenses, such as brokerage, appraisal, accounting, legal or consulting fees or any financing costs, incurred by Seller or the Plan Administrator in negotiating and preparation of this Agreement or in consummating the Sale Transaction and obligations of Seller contemplated by this Agreement;

**2.2.2**    Any liability, commitment or obligation incurred by Seller in connection with the breach of any representation or warranty by Seller contained in this Agreement or as a result of any such breach; and

**2.2.3**    Any federal, state or local pass-through tax liabilities of any kind or nature relating to Dirk's Membership Interest arising or accruing before the Closing Date (as that term is defined in Section 6.1 of this Agreement), and any taxes that will arise as a result of the sale of Dirk's Membership Interest. All federal, state or local pass-through tax liabilities of any other kind or nature relating to Dirk's Membership Interest arising on or after the Closing Date will be the sole obligation and liability of Buyer.

**2.3    Purchase Price.** The total purchase price to be paid by Buyer to Seller for Dirk's Membership Interest will be the Purchase Price.

**2.4    Payment of Purchase Price.** The Purchase Price for Dirk's Membership Interest will be paid by Buyer to Seller in full, in cash (U.S. currency) at the Closing (as that term is defined in Section 6.1 of this Agreement), subject to application of the Deposit (as that term is defined in Section 2.5 of this Agreement). At the Closing, Buyer will pay to Seller, by wire transfer of immediately available funds to an account designated by the Plan Administrator, cash (U.S. currency) in the amount of the balance of the Purchase Price after taking into account the Deposit.

**2.5    Earnest Money Deposit.** Within two (2) business days after the parties execute and deliver to each other this Agreement, Buyer will deliver to the Plan Administrator to be held on behalf of Seller, by wire transfer of immediately available

**Page 3 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

funds to an account designated by the Plan Administrator, cash (U.S. currency) in the amount of Twelve Thousand Five Hundred and No/100 Dollars ($12,500.00) (the "Deposit") as an earnest money deposit. Pending Closing of the Sale Transaction, the Deposit will be deposited by the Plan Administrator into a non-interest bearing bank account controlled by the Plan Administrator for the benefit of Seller. At the Closing of the Sale Transaction, the Deposit will be applied and credited towards payment of the Purchase Price. In the event the sale to the Buyer is not approved by the Bankruptcy Court or if a qualifying overbid is received and approved, Seller will, within two (2) business days thereafter, release and deliver to Buyer, by wire transfer of immediately available funds to an account designated by the Buyer, the Deposit (without any interest thereon). In the event the sale to Buyer is approved by the Bankruptcy Court, the Deposit will become immediately nonrefundable except in the case of a Seller default under this Agreement.

**2.6    Sale Motion and Sale Order; Sale Subject to Bankruptcy Court Approval**.  Within five (5) days after the Effective Date, the Plan Administrator will cause to be filed with the Bankruptcy Court, on terms, conditions and requirements as determined by the Plan Administrator in the Plan Administrator's sole and absolute discretion, the Sale Motion seeking the entry of the Sale Order providing for: (i) the approval of all of Seller's obligations under this Agreement and the documents to be executed and delivered by Seller pursuant to this Agreement and the Sale Motion (collectively, the "Sale Documents"); and (ii) the authorization of Seller and the Plan Administrator to perform all of Seller's obligations under the Sale Documents. Notwithstanding anything to the contrary in this Agreement, the proposed sale, all of Seller's and the Plan Administrator's obligations under this Agreement and the other Sale Documents are all subject to notice to creditors, possible overbid and approval of the Bankruptcy Court.

**2.7    Notice of Developments**.  At all times prior to the Closing Date, the Plan Administrator will promptly notify Buyer and its counsel in writing of any material adverse development that might delay, prevent, or hinder the consummation of the Sale Transaction or otherwise cause a breach of any of the Seller representations and warranties set forth in Section 3.1 of this Agreement.

**2.8    Company Pre-Closing Distribution of Cash to Seller.** As a condition to the consummation of the Sale Transaction, on the Closing Date and immediately prior to closing of the Sale Transaction, and in addition to payment in full of the Purchase Price, Buyer will cause the Company to distribute to Seller (in Seller's capacity as a member of the Company), by wire transfer of immediately available funds (U.S. currency) to an account designated by the Plan Administrator and sent on the Closing Date, the amount of Three Hundred Sixteen Thousand Nine Hundred Seventeen and 34/100 Dollars ($316,917.34) (the "Seller's Pre-Closing Distribution").

**SECTION 3.  SELLER'S REPRESENTATIONS AND WARRANTIES; AS IS SALE TRANSACTION**

**Page 4 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**3.1    Representations and Warranties of Seller.** As a material inducement to Buyer to enter into this Agreement and purchase Dirk's Membership Interest, Seller hereby makes the following representations and warranties to Buyer:

**3.1.1    Authority.** Subject to the Settlement Agreement Order and obtaining the Sale Order, Seller has the legal power, right and authority to enter into this Agreement and all other agreements and instruments contemplated by this Agreement to which Seller is a party (collectively, the "Seller Related Documents"), and to consummate the Sale Transaction.

**3.1.2    Enforceability.** Subject to the Settlement Agreement Order and obtaining the Sale Order, this Agreement and the Seller Related Documents, when executed and delivered by the parties thereto, will constitute the legal, valid, and binding obligations of Seller enforceable against Seller in accordance with their respective terms, except as enforceability may be limited by applicable bankruptcy, insolvency, and similar statutes affecting creditors' rights generally and judicial limits on equitable remedies.

**3.1.3    Absence of Conflicting Agreements or Required Consents**. Subject to the Bankruptcy Court's entry of the Sale Order approving the consummation of the Sale Transaction, the execution, delivery and performance by Seller of this Agreement: (i) to the actual knowledge of the Plan Administrator, does not require the consent of or notice to any governmental or regulatory authority or any other third party; (ii) to the actual knowledge of the Plan Administrator, will not materially conflict with or result in a material violation of any law, ordinance, regulation, ruling, judgment, order or injunction of any court or governmental instrumentality to which Seller is subject or by which Seller is bound; and (iii) to the actual knowledge of the Plan Administrator, and except as may otherwise be provided in the operating agreement or articles of organization for the Company (as the same may be amended), will not create any lien, encumbrance or restriction upon Dirk's Membership Interest.

**3.1.4    Litigation.** Except for the Parkinson Seed Bankruptcy and the Dirk and Robyn Bankruptcy, no action, suit, proceeding, order, investigation, or claim is pending or, to the Plan Administrator's actual knowledge, threatened against Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, the Dirk and Robyn Bankruptcy estate, or Dirk's Membership Interest, at law or in equity, or before or by any third-party, governmental department, commission, board, bureau, agency, or instrumentality, that might delay, prevent, or hinder the consummation of the Sale Transaction.

**3.1.5    Brokers**. There are no claims for broker's commissions, finder's fees, or similar compensation in connection with the Sale Transaction based on any arrangement or agreement entered into by Seller or the Plan Administrator and binding on Buyer or the Company.

**Page 5 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**3.1.6 Recitals**. To the Plan Administrator's actual knowledge, the information contained in the Recitals is true and correct.

**3.2 "AS IS" Transaction; Waiver and Release.** Except for the representations and warranties of Seller set forth in this Agreement and any of the Seller Related Documents, Buyer acknowledges and agrees that it is acquiring Dirk's Membership Interest on an **"AS IS"** basis without any kind of representation or warranty of any kind or nature whatsoever, whether expressed or implied. Buyer hereby agrees that except for any breach by Seller of any express warranty set for in this Agreement or any of the Seller Related Documents, Seller has no liability for, and Buyer hereby waives and discharges any and all claims against, and fully, unconditionally and forever releases, Seller, the Plan Administrator and Dirk from, for and against any and all liability arising from or otherwise related in any way to any and all aspects whatsoever of Dirk's Membership Interest, the Company and its operations and assets, and the transactions contemplated in this Agreement, whether direct or indirect, absolute or contingent, foreseen or unforeseen, and known or unknown. Buyer hereby agrees that the foregoing waiver and release extends to Seller, the Plan Administrator and Dirk and each of their respective heirs, legal representatives, affiliates, successors, assigns, agents and representatives.

## SECTION 4. BUYER'S REPRESENTATIONS AND WARRANTIES

As a material inducement to Seller to enter into this Agreement and sell Dirk's Membership Interest to Buyer, Buyer hereby makes the following representations and warranties to Seller:

**4.1 Enforceability.** Subject to the Settlement Agreement Order and obtaining the Sale Order, this Agreement and all other agreements and instruments contemplated by this Agreement to which Buyer is a party (collectively, the "Buyer Related Documents"), when executed and delivered by the parties thereto, will constitute the legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms, except as enforceability may be limited by applicable bankruptcy, insolvency, and similar statutes affecting creditors' rights generally and judicial limits on equitable remedies.

**4.2 No Conflict with Other Instruments or Agreements.** Buyer's execution, delivery, and performance of this Agreement and all other Buyer Related Documents to the actual knowledge of Buyer will not result in a breach or violation of, or constitute a default under, any material contract or agreement to which Buyer is a party or by which Buyer is bound.

**4.3 Governmental Authorities.** To the actual Knowledge of Buyer, Buyer is not required to submit any notice, report, or other filing with any governmental or regulatory authority in connection with Buyer's execution, delivery, and performance of this Agreement or any of the other Buyer Related Documents and the consummation of the Sale Transaction, and no consent, approval, or authorization of any governmental or

**Page 6 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

regulatory authority is required to be obtained by Buyer in connection with Buyer's execution, delivery, and performance of this Agreement or any of the other Buyer Related Documents and the consummation of the Sale Transaction.

**4.4    Litigation.** Except for the Parkinson Seed Bankruptcy and the Dirk and Robyn Bankruptcy, no action, suit, proceeding, order, investigation, or claim is pending or, to Buyer's actual knowledge, threatened against Buyer or Buyer's assets, at law or in equity, or before or by any governmental department, commission, board, bureau, agency, or instrumentality, that might delay, prevent, or hinder the consummation of the Sale Transaction.

**4.5    Investment Representations.**

**4.5.1  Investment Purposes.** Buyer is acquiring Dirk's Membership Interest for Buyer's own account with the sole intention of holding Dirk's Membership Interest for purposes of investment, and Buyer has no intention of selling Dirk's Membership Interest in a public distribution in violation of the United States securities laws or any applicable state securities laws. During the course of the negotiation of this Agreement and the Sale Transaction, Buyer has had ample opportunity to ask questions of and to receive answers from Seller and the Plan Administrator concerning the Company, Dirk's Membership Interest, and the Sale Transaction.

**4.5.2  Purchased Ownership Interest Has Not Been Registered.** Buyer understands that Dirk's Membership Interest has not been registered under the Securities Act of 1933, as amended or applicable state securities laws, by reason of specific exemptions from the registration provisions of those laws that depend on, among other things, the bona fide nature of the investment intent as expressed in this Agreement.

**4.6    Brokers.** There are no claims for broker's commissions, finder's fees, or similar compensation in connection with the Sale Transaction based on any arrangement or agreement entered into by Buyer and binding on Seller or the Company.

## SECTION 5.  CONDITIONS PRECEDENTS TO CLOSING

**5.1    Seller's Conditions.** Each and every obligation of Seller under this Agreement is subject to the satisfaction, at or before the Closing, of each of the following conditions:

**5.1.1  Approval of Sale Motion.** Prior to the Closing the Bankruptcy Court will have entered the Sale Order providing for the approval of all of Seller's obligations under this Agreement and the other Sale Documents and the authorization of Seller and the Plan Administrator to perform all of Seller's obligations under the Sale Documents.

**Page 7 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**5.1.2  Representations and Warranties; Performance.** Each of the representations and warranties made by Buyer in this Agreement will be true and correct in all respects as of the Closing Date (as that term is defined in Section 6.1 of this Agreement) with the same effect as though made at that time. Buyer will have performed and complied with all agreements, covenants, and conditions required by this Agreement to be performed and complied with by Buyer before or by the Closing (including, but not limited to, causing the Company to have performed under Section 2.8 of this Agreement).

**5.1.3  No Proceeding or Litigation.** No action, suit, or proceeding before any court or any governmental or regulatory authority will have been commenced and be continuing, and no investigation by any governmental or regulatory authority will have been commenced and be continuing, and no action, investigation, suit, or proceeding will be threatened at the time of the Closing, against Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, the Dirk and Robyn Bankruptcy estate, the Company or Buyer, or any of their respective affiliates, associates, agents, members, managers or officers, seeking to restrain, prevent, or change the Sale Transaction, questioning the validity or legality of the Sale Transaction, or seeking damages in connection with the Sale Transaction.

The conditions set forth in this Section 5.1 are solely for the benefit of Seller and may be waived only by the Plan Administrator acting on behalf of Seller.  At all times the Plan Administrator (acting on behalf of Seller) has the right to waive any such condition. Such waiver or waivers must be in writing signed by the Plan Administrator and delivered to Buyer.  If any conditions set forth in this Section 5.1 are not satisfied on or before the Closing Date and the Plan Administrator has not waived the unsatisfied conditions, Buyer will not be deemed to be in default (unless Buyer has breached Section 5.1.2 of this Agreement) and Seller's, including the Plan Administrator's, sole remedy will be to terminate this Agreement (and upon such termination, provided the termination was not due to a Buyer default hereunder, the Plan Administrator acting on behalf of Seller will refund the Deposit (without any interest thereon) to Buyer within three (3) business days of such termination).

**5.2  Buyer's Conditions.** Each and every obligation of Buyer under this Agreement is subject to the satisfaction, at or before the Closing, of each of the following conditions:

**5.2.1  Approval of Sale Motion.**  Prior to the Closing, the Bankruptcy Court will have entered the Sale Order providing for the approval of all of Seller's obligations under this Agreement and the other Sale Documents and the authorization of Seller and the Plan Administrator to perform all of Seller's obligations under the Sale Documents.

**5.2.2  Representations and Warranties; Performance.** Each of the representations and warranties made by Seller in this Agreement will be true and correct in all respects as of the Closing Date with the same effect as though made at

**Page 8 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

that time. Seller will have performed and complied with all agreements, covenants, and conditions required by this Agreement to be performed and complied with by Seller before or by the Closing.

**5.2.3  No Proceeding or Litigation.** No action, suit, or proceeding before any court or any governmental or regulatory authority will have been commenced and be continuing, and no investigation by any governmental or regulatory authority will have been commenced and be continuing, and no action, investigation, suit, or proceeding will be threatened at the time of the Closing, against Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, the Dirk and Robyn Bankruptcy estate, the Company or Buyer, or any of their respective affiliates, associates, agents, members, managers or officers, seeking to restrain, prevent, or change the Sale Transaction, questioning the validity or legality of the Sale Transaction, or seeking damages in connection with the Sale Transaction.

The conditions set forth in this Section 5.2 are solely for the benefit of Buyer and may be waived only by Buyer.  At all times Buyer has the right to waive any such condition.  Such waiver or waivers must be in writing signed by Buyer and delivered to the Plan Administrator.  If any conditions set forth in this Section 5.2 are not satisfied on or before the Closing Date and Buyer has not waived the unsatisfied conditions, Seller will not be deemed to be in default (unless Seller has breached Section 5.2.2 of this Agreement) and Buyer's sole remedy will be to terminate this Agreement (and upon such termination, provided the termination was not due to a Buyer default hereunder, Seller will refund the Deposit (without any interest thereon) to Buyer within three (3) business days of such termination).

## SECTION 6.  CLOSING

**6.1  Time, Place, and Manner of Closing.** The closing of the Sale Transaction (the "Closing") will be held at the offices of Johnson May, 199 N. Capital Blvd., Suite 200, Boise, Idaho on the fifth (5th) business day after entry of the Sale Order (the "Closing Date"), or at such other Closing Date and/or place as the Plan Administrator and Buyer may mutually agree upon in writing. The Closing will be deemed to occur effective at 11:59 p.m. on the Closing Date.

**6.2  Events of Closing.** At the Closing, the following events will occur:

**6.2.1  Buyer will purchase Dirk's Membership Interest from Seller, and in connection therewith, Seller will transfer Dirk's Membership Interest to Buyer by the Plan Administrator executing and delivering to Buyer an Assignment of Membership Interest instrument, in the form attached hereto as **Exhibit A**;

**6.2.2  Buyer will deliver to the Plan Administrator the Purchase Price (less the Deposit) in full, in cash (U.S. currency), by Buyer's wire transfer of immediately available funds to an account designated by the Plan Administrator, which account shall be designated to Buyer at least three (3) business days prior to the Closing Date;

**Page 9 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**6.2.3** Buyer will cause the Company to distribute to Seller, by the Company's wire transfer of immediately available funds to an account designated by the Plan Administrator, which account shall be designated to Buyer at least three (3) business days prior to the Closing Date, the Seller's Pre-Closing Distribution as provided for in Section 2.8 of this Agreement; and

**6.2.4** The parties shall execute and deliver such other documents as are reasonably necessary to carry out the terms of this Agreement.

**6.3    Consummation of Closing.** All acts, deliveries, and confirmations to be completed at the Closing, regardless of chronological sequence, will be deemed to occur contemporaneously and simultaneously on the occurrence of the last act, delivery, or confirmation of the Closing, and none of such acts, deliveries, or confirmations will be effective unless and until the last of the same will have occurred. Regardless of when the last act, delivery, or confirmation of the Closing takes place, the transfer of the Dirk's Membership Interest will be deemed to occur as of 11:59 p.m. on the Closing Date.

## SECTION 7.  TERMINATION

**7.1    Rights of Parties to Terminate.** This Agreement may be terminated as follows:

(a)    by the Buyer, if for any reason the sale to Buyer is not approved by the Bankruptcy Court;

(b)    by Buyer, if Seller has defaulted under any of its obligations under this Agreement in any material respect;

(c)    by Seller, if Buyer has defaulted under any of its obligations under this Agreement in any material respect; or

(d)    by the mutual written consent of the Buyer and the Seller.

**7.2    Effect of Termination.** If either Buyer or Seller decides to terminate this Agreement pursuant to Section 7.1 of this Agreement, such party will give written notice to the other party to this Agreement of such decision. In the event of a termination of this Agreement, the parties to this Agreement will be released from all liabilities and obligations arising under this Agreement with respect to the matters contemplated by this Agreement, other than for damages arising from a default under this Agreement.

## SECTION 8.  SURVIVAL; INDEMNIFICATION

**8.1    Survival of Representations and Warranties.** All representations and warranties made in this Agreement, the Seller Related Documents and the Buyer

**Page 10 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Related Documents will survive the Closing of this Agreement for a period of one (1) year after the Closing Date, except that any party to whom a representation or warranty has been made in this Agreement will be deemed to have waived any misrepresentation or breach of the representation or warranty if the party had knowledge of such breach before the Closing. One (1) year after the Closing Date, all representations and warranties made in this Agreement, the Seller Related Documents and the Buyer Related Documents will thereafter be without force or effect, except for any claim with respect to which notice has been given to the potential indemnifying party before such expiration date.

**8.2    Indemnification by Buyer.**

**8.2.1    Extent of Indemnification.** Subject to Section 8.2.2 of this Agreement, Buyer hereby agrees to indemnify, defend and hold harmless Seller, the Plan Administrator, Dirk and their respective heirs, legal representatives, affiliates, successors, assigns, agents and representatives (collectively, the "Indemnified Parties") from, for and against any and all demands, claims, causes of actions, liabilities, obligations, damages, costs, and expenses, including reasonable attorney fees arising out of or related in any way to any of the following:

(a)    Any breach or inaccuracy of any representation or warranty of Buyer made in this Agreement or any of the Buyer Related Documents;

(b)    Any failure by Buyer to perform any covenant required to be performed by Buyer pursuant to this Agreement or any of the Buyer Related Documents;

(c) Any obligation or liability of the Company which Dirk or Seller or either of them personally guaranteed (including, but not limited to, any loan or lease); or

(d)    Any claim, obligation or liability arising out of or in any related to the operation of the Company's business, whether arising before or after the Closing Date.

**8.2.2    Notice of Claim.** If any claim is asserted against any of the Indemnified Parties that would give rise to a claim by any of the Indemnified Parties against Buyer for indemnification under the provisions of this Section 8.2, the Plan Administrator, Seller or Dirk will promptly give written notice to Buyer concerning such claim and Buyer will, at no expense to the Indemnified Parties, defend the claim with legal counsel reasonably acceptable to the Plan Administrator or Seller.

**8.3    Limitation on Liability.** Notwithstanding anything to the contrary in this Agreement, in no event will any party to this Agreement be liable to the other party to this Agreement for any consequential or punitive damages arising from any breach of any representation, warranty or covenant of this Agreement, and each party to this

**Page 11 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Agreement hereby waives and releases his or its right to seek consequential and punitive damages against the other party to this Agreement.

## SECTION 9.  MISCELLANEOUS PROVISIONS

**9.1    Binding Effect.**  This Agreement is binding on and inures to the benefit of the parties and their respective heirs, legal representatives, successors, and assigns.

**9.2    Assignment.** Neither party may assign any rights or delegate any duties under this Agreement without the prior written consent of the other party.

**9.3    Entire Agreement.**  This Agreement (including the Recitals and Exhibits to this Agreement) sets forth the entire understanding of the parties with respect to the subject matter of this Agreement and supersedes any and all prior understandings and agreements, whether written or oral, between the parties with respect to such subject matter.

**9.4    Amendments.**  This Agreement may be amended only by an instrument in writing executed by both parties, which writing must refer to this Agreement.

**9.5    Waiver.**  Any provision or condition of this Agreement may be waived at any time, in writing, by the party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

**9.6    Notices.** All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with confirmation) to the parties at the following addresses (or at such other address as a party may designate by like notice to the other party):

If to Seller or the Plan Administrator, then to:

Matthew McKinlay
CFO Solutions, L.C.
13601 W. McMillan Road, Suite 102, PMB 320
Boise, ID  83713

with a copy to:

Jeffrey C. Misley
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205

If to Buyer, then to:

**Page 12 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Exhibit A
Page 12 of 34

Craig Bartschi
8095 E. Executive Ave.
Nampa, Idaho 83687

with a copy to:

Justin May
Johnson May Law
199 N. Capitol Blvd. Ste 200
Boise, ID 83702

Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the third day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by overnight delivery service.

**9.7    Attorney Fees.**  With respect to any dispute relating to this Agreement, or in the event that a suit, action, arbitration, or other proceeding of any nature whatsoever is instituted to interpret or enforce the provisions of this Agreement, including, without limitation, any proceeding under the U.S. Bankruptcy Code and involving issues peculiar to federal bankruptcy law or any action, suit, arbitration, or proceeding seeking a declaration of rights or rescission, the prevailing party shall be entitled to recover from the losing party its reasonable attorney fees, paralegal fees, expert fees, and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, as determined by the judge or arbitrator at trial, arbitration, or other proceeding, or on any appeal or review, in addition to all other amounts provided by law.

**9.8    Construction.**    The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Whenever the words "include" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Every covenant, term and provision of this Agreement is to be construed simply according to its fair meaning and not strictly for or against any party. The parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of the intent or interpretation arises, this Agreement must be construed as if drafted jointly by the parties, and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of authorship of any of the provisions of this Agreement.

**9.9    Counterparts.**  This Agreement may be executed in separate counterparts, each of which when executed and delivered will be an original, but all of which together will constitute one and the same Agreement.

**Page 13 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Exhibit A
Page 13 of 34

**9.10    Electronically Transmitted Signatures.**  Electronic transmission of any signed original of this Agreement, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Agreement.

**9.11    Severability.**    If any provision of this Agreement is invalid or unenforceable in any respect for any reason, the validity and enforceability of any such provision in any other respect and of the remaining provisions of this Agreement will not be impaired.

**9.12    Further Assurances.**  Each party agrees to execute and deliver such other documents and to do and perform such other acts and things as the other party may reasonably request from time to time to carry out the intent and accomplish the purposes of this Agreement

**9.13    Time of Essence.**  Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

**9.14    No Third-Party Beneficiaries.**   Nothing in this Agreement, express or implied, confers any right, remedy, or claim of any nature whatsoever on any person other than the parties to this Agreement.

**9.15    Expenses.**  Each party will bear each such party's own expenses in connection with this Agreement and the Sale Transaction.

**9.16    Recitals and Exhibits.**  The Recitals and Exhibits to this Agreement are hereby made a part of this Agreement as if fully set forth in this Agreement.

**9.17    Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the State of Idaho without giving effect to any conflict-of-law principle that would result in the laws of any other jurisdiction governing this Agreement.

**9.18    Injunctive and Other Equitable Relief.**   The parties agree that the remedy at law for any breach or threatened breach by a party may, by its nature, be inadequate, and that the other party will be entitled, in addition to damages, to a restraining order, temporary and permanent injunctive relief, specific performance, and other appropriate equitable relief, without showing or proving that any monetary damage has been sustained.

**9.19    Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the parties exclusively in the United States Bankruptcy Court for the District of Idaho.

**9.20    Sussman Shank LLP Legal Representation.** The parties hereto, by their signatures hereto, hereby acknowledge, understand and agree that this Agreement was prepared by Sussman Shank LLP acting as legal counsel solely for the Plan Administrator; that Sussman Shank LLP has only provided legal advice to and

**Page 14 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

represented the Plan Administrator in this Sale Transaction; and that Buyer has been advised by Sussman Shank LLP to obtain the advice and assistance of separate, independent legal counsel to represent the interests of Buyer in this Sale Transaction and with respect to the content, terms and conditions of this Agreement, and Buyer has been afforded opportunity to do so.

**IN WITNESS WHEREOF,** the parties have entered into this Agreement effective as of the Effective Date.

**SELLER:**                                          **BUYER:**

PARKINSON SEED FARM, INC.,              CRAIG BARTSCHI,
an Idaho corporation                              an individual


By:_____        _____
      Matthew McKinlay,                         Craig Bartschi
      Plan Administrator


                                                    BRYAN BARTSCHI,
                                                    an individual


                                                    _____
                                                    Bryan Bartschi

**Page 15 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**EXHIBIT A**
**ASSIGNMENT OF MEMBERSHIP INTEREST**

For good and valuable consideration, effective as of 11:59 p.m. on _____, 2022, PARKINSON SEED FARM, INC., an Idaho corporation (the "Assignor"), acting by and through Matthew R. McKinlay (of CFO Solutions, L.C., dba Advanced CFO) in his capacity as the duly appointed Plan Administrator under that certain SummitBridge National Investments VI LLC's Amended Chapter 11 Plan of Liquidation entered December 11, 2019, in the matter of In re Parkinson Seed Farm, Inc., an Idaho corporation, Debtor, United States Bankruptcy Court, District of Idaho, Case No. 18-40412-JMM, does hereby sell, assign and transfer to CRAIG BARTSCHI, an individual, and BRYAN BARTSCHI, an individual (Craig Bartschi and Bryan Bartschi, together, the "Assignee"), all membership interest previously owned by Dirk Parkinson (the "Membership Interest") in IDAHO SPRINGS, LLC, an Idaho manager-managed limited liability company formerly known as Snowy Peak, LLC (the "Company"), which Dirk Parkinson claims to be a 70% Membership Interest in the Company as of the date of this Assignment of Membership Interest instrument, and Assignee does hereby accept such sale, assignment and transfer of the Membership Interest and does hereby agree to be bound by all of the terms, conditions and provisions of that certain Operating Agreement for the Company dated November 5, 1998, with respect to the Membership Interest. This Assignment of Membership Interest (this "Assignment") is made and entered into in connection with consummating the transactions under that certain Membership Interest Purchase and Sale Agreement dated _____, 2022 (the "Purchase and Sale Agreement") by and between Assignor and Assignee, and is subject to all of the terms and conditions of the Purchase and Sale Agreement. This Assignment may be executed in separate counterparts, each of which when executed and delivered will be an original, but all of which together will constitute one and the same instrument. Electronic transmission of any signed original of this Assignment, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Assignment.

[Remainder of page left intentionally blank]

**Page 16 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**ASSIGNOR:**                                    **ASSIGNEE:**

PARKINSON SEED FARM, INC.,              CRAIG BARTSCHI,
an Idaho corporation                           an individual


By:_____              _____
　　　　Matthew McKinlay,                     Craig Bartschi
　　　　Plan Administrator


                                                   BRYAN BARTSCHI,
                                                   an individual


                                                   _____

                                                   Bryan Bartschi


**Page 17 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

## MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT

**THIS MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT** (this "Agreement") is made and entered into effective as of _____, 2022 (the "Effective Date"), by and between PARKINSON SEED FARM, INC., an Idaho corporation (the "Seller"), acting by and through Matthew R. McKinlay (of CFO Solutions, L.C., dba Advanced CFO) in his capacity as the duly appointed Plan Administrator (the "Plan Administrator") under that certain SummitBridge National Investments VI LLC's Amended Chapter 11 Plan of Liquidation entered December 11, 2019, in the matter of In re Parkinson Seed Farm, Inc., an Idaho corporation, Debtor, United States Bankruptcy Court, District of Idaho (the "Bankruptcy Court"), Case No. 18-40412-JMM (the "Parkinson Seed Bankruptcy"), CRAIG BARTSCHI, an individual, and BRYAN BARTSCHI, an individual (Craig Bartschi and Bryan Bartschi, together, the "Buyer").

## RECITALS

A.      As of the Effective Date, DCB HOLDINGS, LLC, an Idaho member-managed limited liability company (the "Company"), has three (3) members, namely Craig Bartschi ("Craig"), Bryan Bartschi ("Bryan"), and Dirk Parkinson ("Dirk").

B.      In connection with providing a governance structure for the Company, Craig, Bryan and Dirk entered into that certain Operating Agreement with an effective date of June 27, 2003 (as amended, the "Operating Agreement").

C.      Pursuant to the terms of the Operating Agreement, the Company has only one class of membership interest in the Company (the "Membership Interests"), which Membership Interests have both voting and economic rights in the Company. As of the Effective Date, Dirk claims a 51% Membership Interest in the Company (Dirk's claimed 51% Membership Interest in the Company is herein after referred as "Dirk's Membership Interest"). As of the Effective Date, Craig and Bryan collectively own the remaining Membership Interests in the Company.

D.      On September 4, 2020, Dirk and his wife, Robyn Parkinson, filed for relief under Chapter 11 of the United States Bankruptcy Code, in the matter of In re Dirk W. Parkinson and Robyn Parkinson, Debtors, United States Bankruptcy Court, District of Idaho, Case No. 20-40698 (the "Dirk and Robyn Bankruptcy"). On April 28, 2021, the Dirk and Robyn Bankruptcy was converted to a Chapter 7 case and Sam Hopkins was appointed as the Bankruptcy Trustee (the "Trustee") in the Dirk and Robyn Bankruptcy.

E.      On or about October 7, 2021, the Plan Administrator in the Parkinson Seed Bankruptcy and the Trustee in the Dirk and Robyn Bankruptcy entered into that certain Settlement Agreement dated October 7, 2021 (the "Settlement Agreement"), pursuant to which (i) the Trustee in the Dirk and Robyn Bankruptcy agreed that Dirk's Membership Interest in the Company shall be administered by the Plan Administrator as part of the Parkinson Seed Bankruptcy, and (ii) the Trustee in the Dirk and Robyn

**Page 1 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Bankruptcy agreed to cooperate with the Plan Administrator in the Parkinson Seed Bankruptcy as to administration of Dirk's Membership Interest in the Company, including executing such documents as may be necessary to complete the terms of the settlement and any subsequent sale, transfer or assignment of Dirk's Membership Interest in the Company.

F.    On November 11, 2021, the Plan Administrator in the Parkinson Seed Bankruptcy and the Trustee in the Dirk and Robyn Bankruptcy filed a Stipulated Motion for Order Approving Settlement Agreement in the Parkinson Seed Bankruptcy, seeking an Order approving the Settlement Agreement. On December 7, 2021, the Bankruptcy Court in the Parkinson Seed Bankruptcy entered an Order Approving Stipulated Settlement Motion (the "Settlement Agreement Order"), pursuant to which the Settlement Agreement was approved in the Parkinson Seed Bankruptcy. On December 13, 2021, an Amended Order Approving Stipulated Settlement Motion was also entered by the bankruptcy court in the Dirk and Robyn Bankruptcy.

G.    As provided in this Agreement, the Plan Administrator intends to file a motion with the Bankruptcy Court in the Parkinson Seed Bankruptcy (the "Sale Motion") seeking an Order from the Bankruptcy Court (the "Sale Order") approving the sale of Dirk's Membership Interest to Buyer.

H.    The Plan Administrator and Buyer have reached an agreement pursuant to which Seller will sell to Buyer, and Buyer will purchase from Seller, Dirk's Membership Interest (the "Sale Transaction") for the purchase price of Nine Hundred Thousand and No/100 Dollars ($900,000.00) (the "Purchase Price"), unless a higher Purchase Price is agreed to by Buyer and approved by the Bankruptcy Court in the Sale Order in connection with the Sale Motion.

I.    Seller and Buyer desire to enter into this Agreement to set forth the terms and conditions on which Seller will sell to Buyer, and Buyer will purchase from Seller, Dirk's Membership Interest if the Sale Transaction is approved by the Bankruptcy Court's entry of the Sale Order.

## AGREEMENT

**NOW, THEREFORE,** for good and valuable consideration as provided for in this Agreement, the parties hereby agree as follows:

## SECTION 1. INCORPORATION OF RECITALS

The Recitals to this Agreement are hereby incorporated into and made a part of this Agreement.

## SECTION 2. PURCHASE OF DIRK'S MEMBERSHIP INTEREST; EXCLUDED LIABILITIES; PURCHASE PRICE AND PAYMENT OF PURCHASE

**Page 2 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

## PRICE; EARNEST MONEY DEPOSIT; SALE MOTION AND SALE ORDER; PRE-CLOSING DISTRIBUTION OF CASH

**2.1    Purchase of Dirk's Membership Interest.**  Subject and pursuant to the terms and conditions of this Agreement, Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, Dirk's Membership Interest free and clear of any pledge, lien, charge, security interest, claim, or other encumbrance.

**2.2    Excluded Liabilities**.  Buyer shall not assume and shall not be responsible to pay, perform, or discharge any liabilities of Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, or the Dirk and Robyn Bankruptcy estate of any kind or nature whatsoever (the "Excluded Liabilities"). The Excluded Liabilities do not include any obligation or liability of the Company. The Excluded Liabilities shall include, without limitation, the following:

    **2.2.1**    Any costs or expenses, such as brokerage, appraisal, accounting, legal or consulting fees or any financing costs, incurred by Seller or the Plan Administrator in negotiating and preparation of this Agreement or in consummating the Sale Transaction and obligations of Seller contemplated by this Agreement;

    **2.2.2**    Any liability, commitment or obligation incurred by Seller in connection with the breach of any representation or warranty by Seller contained in this Agreement or as a result of any such breach; and

    **2.2.3**    Any federal, state or local pass-through tax liabilities of any kind or nature relating to Dirk's Membership Interest arising or accruing before the Closing Date (as that term is defined in Section 6.1 of this Agreement) and any taxes that will arise as a result of the sale of Dirk's Membership Interest. All federal, state or local pass-through tax liabilities of any other kind or nature relating to Dirk's Membership Interest arising on or after the Closing Date will be the sole obligation and liability of Buyer.

**2.3    Purchase Price.** The total purchase price to be paid by Buyer to Seller for Dirk's Membership Interest will be the Purchase Price.

**2.4    Payment of Purchase Price.** The Purchase Price for Dirk's Membership Interest will be paid by Buyer to Seller in full, in cash (U.S. currency) at the Closing (as that term is defined in Section 6.1 of this Agreement), subject to application of the Deposit (as that term is defined in Section 2.5 of this Agreement). At the Closing, Buyer will pay to Seller, by wire transfer of immediately available funds to an account designated by the Plan Administrator, cash (U.S. currency) in the amount of the balance of the Purchase Price after taking into account the Deposit.

**2.5    Earnest Money Deposit.** Within two (2) business days after the parties execute and deliver to each other this Agreement, Buyer will deliver to the Plan Administrator to be held on behalf of Seller, by wire transfer of immediately available funds to an account designated by the Plan Administrator, cash (U.S. currency) in the

**Page 3 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Exhibit A
Page 20 of 34

amount of Thirty Seven Thousand Five Hundred and No/100 Dollars ($37,500.00) (the "Deposit") as an earnest money deposit. Pending Closing of the Sale Transaction, the Deposit will be deposited by the Plan Administrator into a non-interest bearing bank account controlled by the Plan Administrator for the benefit of Seller. At the Closing of the Sale Transaction, the Deposit will be applied and credited towards payment of the Purchase Price. In the event the sale to Buyer is not approved by the Bankruptcy Court or if a qualifying overbid is received and approved, Seller will, within two (2) business days thereafter, release and deliver to Buyer, by wire transfer of immediately available funds to an account designated by the Buyer, the Deposit (without any interest thereon). In the event the sale to Buyer is approved by the Bankruptcy Court, the Deposit will become immediately nonrefundable except in the case of a Seller default under this Agreement.

**2.6    Sale Motion and Sale Order; Sale Subject to Bankruptcy Court Approval**.  Within five (5) days after the Effective Date, the Plan Administrator will cause to be filed with the Bankruptcy Court, on terms, conditions and requirements as determined by the Plan Administrator in the Plan Administrator's sole and absolute discretion, the Sale Motion seeking the entry of the Sale Order providing for: (i) the approval of all of Seller's obligations under this Agreement and the documents to be executed and delivered by Seller pursuant to this Agreement and the Sale Motion (collectively, the "Sale Documents"); and (ii) the authorization of Seller and the Plan Administrator to perform all of Seller's obligations under the Sale Documents. Notwithstanding anything to the contrary in this Agreement, the proposed sale, all of Seller's and the Plan Administrator's obligations under this Agreement and the other Sale Documents are all subject to notice to creditors, possible overbid and approval of the Bankruptcy Court.

**2.7    Notice of Developments**.  At all times prior to the Closing Date, the Plan Administrator will promptly notify Buyer and its counsel in writing of any material adverse development that might delay, prevent, or hinder the consummation of the Sale Transaction or otherwise cause a breach of any of the Seller representations and warranties set forth in Section 3.1 of this Agreement.

**2.8    Company Pre-Closing Distribution of Cash to Seller.** As a condition to the consummation of the Sale Transaction, on the Closing Date and immediately prior to closing of the Sale Transaction, and in addition to payment in full of the Purchase Price, Buyer will cause the Company to distribute to Seller (in Seller's capacity as a member of the Company), by wire transfer of immediately available funds (U.S. currency) to an account designated by the Plan Administrator and sent on the Closing Date, the amount of Forty-Five Thousand Nine Hundred Eighty-Six and 39/100 Dollars ($45,986.39) (the "Seller's Pre-Closing Distribution").

**SECTION 3.  SELLER'S REPRESENTATIONS AND WARRANTIES; AS IS SALE TRANSACTION**

**Page 4 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**3.1    Representations and Warranties of Seller.** As a material inducement to Buyer to enter into this Agreement and purchase Dirk's Membership Interest, Seller hereby makes the following representations and warranties to Buyer:

**3.1.1    Authority.** Subject to the Settlement Agreement Order and obtaining the Sale Order, Seller has the legal power, right and authority to enter into this Agreement and all other agreements and instruments contemplated by this Agreement to which Seller is a party (collectively, the "<u>Seller Related Documents</u>"), and to consummate the Sale Transaction.

**3.1.2    Enforceability.** Subject to the Settlement Agreement Order and obtaining the Sale Order, this Agreement and the Seller Related Documents, when executed and delivered by the parties thereto, will constitute the legal, valid, and binding obligations of Seller enforceable against Seller in accordance with their respective terms, except as enforceability may be limited by applicable bankruptcy, insolvency, and similar statutes affecting creditors' rights generally and judicial limits on equitable remedies.

**3.1.3    Absence of Conflicting Agreements or Required Consents**. Subject to the Bankruptcy Court's entry of the Sale Order approving the consummation of the Sale Transaction, the execution, delivery and performance by Seller of this Agreement: (i) to the actual knowledge of the Plan Administrator, does not require the consent of or notice to any governmental or regulatory authority or any other third party; (ii) to the actual knowledge of the Plan Administrator, will not materially conflict with or result in a material violation of any law, ordinance, regulation, ruling, judgment, order or injunction of any court or governmental instrumentality to which Seller is subject or by which Seller is bound; and (iii) to the actual knowledge of the Plan Administrator, and except as may otherwise be provided in the operating agreement or articles of organization for the Company (as the same may be amended), will not create any lien, encumbrance or restriction upon Dirk's Membership Interest.

**3.1.4    Litigation.** Except for the Parkinson Seed Bankruptcy and the Dirk and Robyn Bankruptcy, no action, suit, proceeding, order, investigation, or claim is pending or, to the Plan Administrator's actual knowledge, threatened against Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, the Dirk and Robyn Bankruptcy estate, or Dirk's Membership Interest, at law or in equity, or before or by any third-party, governmental department, commission, board, bureau, agency, or instrumentality, that might delay, prevent, or hinder the consummation of the Sale Transaction.

**3.1.5    Brokers**. There are no claims for broker's commissions, finder's fees, or similar compensation in connection with the Sale Transaction based on any arrangement or agreement entered into by Seller or the Plan Administrator and binding on Buyer or the Company.

**Page 5 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**3.1.6 Recitals.** To the Plan Administrator's actual knowledge, the information contained in the Recitals is true and correct.

**3.2 "AS IS" Transaction; Waiver and Release.** Except for the representations and warranties of Seller set forth in this Agreement and any of the Seller Related Documents, Buyer acknowledges and agrees that it is acquiring Dirk's Membership Interest on an **"AS IS"** basis without any kind of representation or warranty of any kind or nature whatsoever, whether expressed or implied. Buyer hereby agrees that except for any breach by Seller of any express warranty set for in this Agreement or any of the Seller Related Documents, Seller has no liability for, and Buyer hereby waives and discharges any and all claims against, and fully, unconditionally and forever releases, Seller, the Plan Administrator and Dirk from, for and against any and all liability arising from or otherwise related in any way to any and all aspects whatsoever of Dirk's Membership Interest, the Company and its operations and assets, and the transactions contemplated in this Agreement, whether direct or indirect, absolute or contingent, foreseen or unforeseen, and known or unknown. Buyer hereby agrees that the foregoing waiver and release extends to Seller, the Plan Administrator and Dirk and each of their respective heirs, legal representatives, affiliates, successors, assigns, agents and representatives.

## SECTION 4. BUYER'S REPRESENTATIONS AND WARRANTIES

As a material inducement to Seller to enter into this Agreement and sell Dirk's Membership Interest to Buyer, Buyer hereby makes the following representations and warranties to Seller:

**4.1 Enforceability.** Subject to the Settlement Agreement Order and obtaining the Sale Order, this Agreement and all other agreements and instruments contemplated by this Agreement to which Buyer is a party (collectively, the "Buyer Related Documents"), when executed and delivered by the parties thereto, will constitute the legal, valid, and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms, except as enforceability may be limited by applicable bankruptcy, insolvency, and similar statutes affecting creditors' rights generally and judicial limits on equitable remedies.

**4.2 No Conflict with Other Instruments or Agreements.** Buyer's execution, delivery, and performance of this Agreement and all other Buyer Related Documents to the actual knowledge of the Buyer will not result in a breach or violation of, or constitute a default under, any material contract or agreement to which Buyer is a party or by which Buyer is bound.

**4.3 Governmental Authorities.** To the actual knowledge of the Buyer, Buyer is not required to submit any notice, report, or other filing with any governmental or regulatory authority in connection with Buyer's execution, delivery, and performance of this Agreement or any of the other Buyer Related Documents and the consummation of the Sale Transaction, and no consent, approval, or authorization of any governmental or

**Page 6 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

regulatory authority is required to be obtained by Buyer in connection with Buyer's execution, delivery, and performance of this Agreement or any of the other Buyer Related Documents and the consummation of the Sale Transaction.

**4.4    Litigation.** Except for the Parkinson Seed Bankruptcy and the Dirk and Robyn Bankruptcy, no action, suit, proceeding, order, investigation, or claim is pending or, to Buyer's actual knowledge, threatened against Buyer or Buyer's assets, at law or in equity, or before or by any governmental department, commission, board, bureau, agency, or instrumentality, that might delay, prevent, or hinder the consummation of the Sale Transaction.

**4.5    Investment Representations.**

**4.5.1  Investment Purposes.** Buyer is acquiring Dirk's Membership Interest for Buyer's own account with the sole intention of holding Dirk's Membership Interest for purposes of investment, and Buyer has no intention of selling Dirk's Membership Interest in a public distribution in violation of the United States securities laws or any applicable state securities laws. During the course of the negotiation of this Agreement and the Sale Transaction, Buyer has had ample opportunity to ask questions of and to receive answers from Seller and the Plan Administrator concerning the Company, Dirk's Membership Interest, and the Sale Transaction.

**4.5.2  Purchased Ownership Interest Has Not Been Registered.** Buyer understands that Dirk's Membership Interest has not been registered under the Securities Act of 1933, as amended or applicable state securities laws, by reason of specific exemptions from the registration provisions of those laws that depend on, among other things, the bona fide nature of the investment intent as expressed in this Agreement.

**4.6    Brokers.** There are no claims for broker's commissions, finder's fees, or similar compensation in connection with the Sale Transaction based on any arrangement or agreement entered into by Buyer and binding on Seller or the Company.

## SECTION 5.  CONDITIONS PRECEDENTS TO CLOSING

**5.1    Seller's Conditions.** Each and every obligation of Seller under this Agreement is subject to the satisfaction, at or before the Closing, of each of the following conditions:

**5.1.1  Approval of Sale Motion.** Prior to the Closing, the Bankruptcy Court will have entered the Sale Order providing for the approval of all of Seller's obligations under this Agreement and the other Sale Documents and the authorization of Seller and the Plan Administrator to perform all of Seller's obligations under the Sale Documents.

**Page 7 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**5.1.2  Representations and Warranties; Performance.** Each of the representations and warranties made by Buyer in this Agreement will be true and correct in all respects as of the Closing Date (as that term is defined in Section 6.1 of this Agreement) with the same effect as though made at that time. Buyer will have performed and complied with all agreements, covenants, and conditions required by this Agreement to be performed and complied with by Buyer before or by the Closing (including, but not limited to, causing the Company to have performed under Section 2.8 of this Agreement).

**5.1.3  No Proceeding or Litigation.** No action, suit, or proceeding before any court or any governmental or regulatory authority will have been commenced and be continuing, and no investigation by any governmental or regulatory authority will have been commenced and be continuing, and no action, investigation, suit, or proceeding will be threatened at the time of the Closing, against Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, the Dirk and Robyn Bankruptcy estate, the Company or Buyer, or any of their respective affiliates, associates, agents, members, managers or officers, seeking to restrain, prevent, or change the Sale Transaction, questioning the validity or legality of the Sale Transaction, or seeking damages in connection with the Sale Transaction.

The conditions set forth in this Section 5.1 are solely for the benefit of Seller and may be waived only by the Plan Administrator acting on behalf of Seller.  At all times the Plan Administrator (acting on behalf of Seller) has the right to waive any such condition. Such waiver or waivers must be in writing signed by the Plan Administrator and delivered to Buyer.  If any conditions set forth in this Section 5.1 are not satisfied on or before the Closing Date and the Plan Administrator has not waived the unsatisfied conditions, Buyer will not be deemed to be in default (unless Buyer has breached Section 5.1.2 of this Agreement) and Seller's, including the Plan Administrator's, sole remedy will be to terminate this Agreement (and upon such termination, provided the termination was not due to a Buyer default hereunder, the Pan Administrator acting on behalf of Seller will refund the Deposit (without any interest thereon) to Buyer within three (3) business days of such termination).

**5.2  Buyer's Conditions.** Each and every obligation of Buyer under this Agreement is subject to the satisfaction, at or before the Closing, of each of the following conditions:

**5.2.1  Approval of Sale Motion.** Prior to the Closing, the Bankruptcy Court will have entered the Sale Order providing for the approval of all of Seller's obligations under this Agreement and the other Sale Documents and the authorization of Seller and the Plan Administrator to perform all of Seller's obligations under the Sale Documents.

**5.2.2  Representations and Warranties; Performance.** Each of the representations and warranties made by Seller in this Agreement will be true and correct in all respects as of the Closing Date with the same effect as though made at that time. Seller will have performed and complied with all agreements, covenants, and

**Page 8 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Exhibit A
Page 25 of 34

conditions required by this Agreement to be performed and complied with by Seller before or by the Closing.

**5.2.3  No Proceeding or Litigation.** No action, suit, or proceeding before any court or any governmental or regulatory authority will have been commenced and be continuing, and no investigation by any governmental or regulatory authority will have been commenced and be continuing, and no action, investigation, suit, or proceeding will be threatened at the time of the Closing, against Seller, the Plan Administrator, Dirk, the Parkinson Seed Bankruptcy estate, the Dirk and Robyn Bankruptcy estate, the Company or Buyer, or any of their respective affiliates, associates, agents, members, managers or officers, seeking to restrain, prevent, or change the Sale Transaction, questioning the validity or legality of the Sale Transaction, or seeking damages in connection with the Sale Transaction.

The conditions set forth in this Section 5.2 are solely for the benefit of Buyer and may be waived only by Buyer.  At all times Buyer has the right to waive any such condition.  Such waiver or waivers must be in writing signed by Buyer and delivered to the Plan Administrator.  If any conditions set forth in this Section 5.2 are not satisfied on or before the Closing Date and Buyer has not waived the unsatisfied conditions, Seller will not be deemed to be in default (unless Seller has breached Section 5.2.2 of this Agreement) and Buyer's sole remedy will be to terminate this Agreement (and upon such termination, provided the termination was not due to a Buyer default hereunder, Seller will refund the Deposit (without any interest thereon) to Buyer within three (3) business days of such termination).

## SECTION 6.  CLOSING

**6.1    Time, Place, and Manner of Closing.** The closing of the Sale Transaction (the "Closing") will be held at the offices of Johnson May, 199 N. Capital Blvd., Suite 200, Boise, Idaho on the fifth (5th) business day after entry of the Sale Order (the "Closing Date"), or at such other Closing Date and/or place as the Plan Administrator and Buyer may mutually agree upon in writing. The Closing will be deemed to occur effective at 11:59 p.m. on the Closing Date.

**6.2    Events of Closing.** At the Closing, the following events will occur:

**6.2.1  Buyer will purchase Dirk's Membership Interest from Seller, and in connection therewith, Seller will transfer Dirk's Membership Interest to Buyer by the Plan Administrator executing and delivering to Buyer an Assignment of Membership Interest instrument, in the form attached hereto as Exhibit A;

**6.2.2  Buyer will deliver to the Plan Administrator the Purchase Price (less the Deposit) in full, in cash (U.S. currency), by Buyer's wire transfer of immediately available funds to an account designated by the Plan Administrator, which account shall be designated to Buyer at least three (3) business days prior to the Closing Date;

**Page 9 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Exhibit A
Page 26 of 34

**6.2.3**  Buyer will cause the Company to distribute to Seller, by the Company's transfer of immediately available funds to an account designated by the Plan Administrator, which account shall be designated to Buyer at least three (3) business days prior to the Closing Date, the Seller's Pre-Closing Distribution as provided for in Section 2.8 of this Agreement; and

**6.2.4**  The parties shall execute and deliver such other documents as are reasonably necessary to carry out the terms of this Agreement.

**6.3    Consummation of Closing.** All acts, deliveries, and confirmations to be completed at the Closing, regardless of chronological sequence, will be deemed to occur contemporaneously and simultaneously on the occurrence of the last act, delivery, or confirmation of the Closing, and none of such acts, deliveries, or confirmations will be effective unless and until the last of the same will have occurred. Regardless of when the last act, delivery, or confirmation of the Closing takes place, the transfer of the Dirk's Membership Interest will be deemed to occur as of 11:59 p.m. on the Closing Date.

## SECTION 7.  TERMINATION

**7.1    Rights of Parties to Terminate.** This Agreement may be terminated as follows:

(a)    by the Buyer, if for any reason the sale to Buyer is not approved by the Bankruptcy Court;

(b)    by Buyer, if Seller has defaulted under any of its obligations under this Agreement in any material respect;

(c)    by Seller, if Buyer has defaulted under any of its obligations under this Agreement in any material respect; or

(d)    by the mutual written consent of the Buyer and the Seller.

**7.2    Effect of Termination.** If either Buyer or Seller decides to terminate this Agreement pursuant to Section 7.1 of this Agreement, such party will give written notice to the other party to this Agreement of such decision. In the event of a termination of this Agreement, the parties to this Agreement will be released from all liabilities and obligations arising under this Agreement with respect to the matters contemplated by this Agreement, other than for damages arising from a default under this Agreement.

## SECTION 8.  SURVIVAL; INDEMNIFICATION

**8.1    Survival of Representations and Warranties.** All representations and warranties made in this Agreement, the Seller Related Documents and the Buyer Related Documents will survive the Closing of this Agreement for a period of one (1)

**Page 10 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

year after the Closing Date, except that any party to whom a representation or warranty has been made in this Agreement will be deemed to have waived any misrepresentation or breach of the representation or warranty if the party had knowledge of such breach before the Closing. One (1) year after the Closing Date, all representations and warranties made in this Agreement, the Seller Related Documents and the Buyer Related Documents will thereafter be without force or effect, except for any claim with respect to which notice has been given to the potential indemnifying party before such expiration date.

**8.2    Indemnification by Buyer.**

**8.2.1    Extent of Indemnification.** Subject to Section 8.2.2 of this Agreement, Buyer hereby agrees to indemnify, defend and hold harmless Seller, the Plan Administrator, Dirk and their respective heirs, legal representatives, affiliates, successors, assigns, agents and representatives (collectively, the "Indemnified Parties") from, for and against any and all demands, claims, causes of actions, liabilities, obligations, damages, costs, and expenses, including reasonable attorney fees arising out of or related in any way to any of the following:

(a)    Any breach or inaccuracy of any representation or warranty of Buyer made in this Agreement or any of the Buyer Related Documents;

(b)    Any failure by Buyer to perform any covenant required to be performed by Buyer pursuant to this Agreement or any of the Buyer Related Documents;

(c)    Any obligation or liability of the Company which Dirk or Seller or either of them personally guaranteed (including, but not limited to, any loan or lease); or

(d)    Any claim, obligation or liability arising out of or in any related to the operation of the Company's business, whether arising before or after the Closing Date.

**8.2.2    Notice of Claim.** If any claim is asserted against any of the Indemnified Parties that would give rise to a claim by any of the Indemnified Parties against Buyer for indemnification under the provisions of this Section 8.2, the Plan Administrator, Seller or Dirk will promptly give written notice to Buyer concerning such claim and Buyer will, at no expense to the Indemnified Parties, defend the claim with legal counsel reasonably acceptable to the Plan Administrator or Seller.

**8.3    Limitation on Liability.** Notwithstanding anything to the contrary in this Agreement, in no event will any party to this Agreement be liable to the other party to this Agreement for any consequential or punitive damages arising from any breach of any representation, warranty or covenant of this Agreement, and each party to this

**Page 11 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Agreement hereby waives and releases his or its right to seek consequential and punitive damages against the other party to this Agreement.

## SECTION 9.  MISCELLANEOUS PROVISIONS

**9.1    Binding Effect.**  This Agreement is binding on and inures to the benefit of the parties and their respective heirs, legal representatives, successors, and assigns.

**9.2    Assignment.** Neither party may assign any rights or delegate any duties under this Agreement without the prior written consent of the other party.

**9.3    Entire Agreement.**  This Agreement (including the Recitals and Exhibits to this Agreement) sets forth the entire understanding of the parties with respect to the subject matter of this Agreement and supersedes any and all prior understandings and agreements, whether written or oral, between the parties with respect to such subject matter.

**9.4    Amendments.**  This Agreement may be amended only by an instrument in writing executed by both parties, which writing must refer to this Agreement.

**9.5    Waiver.**  Any provision or condition of this Agreement may be waived at any time, in writing, by the party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

**9.6    Notices.** All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with confirmation) to the parties at the following addresses (or at such other address as a party may designate by like notice to the other party):

If to Seller or the Plan Administrator, then to:

Matthew McKinlay
CFO Solutions, L.C.
13601 W. McMillan Road, Suite 102, PMB 320
Boise, ID  83713

with a copy to:

Jeffrey C. Misley
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205

If to Buyer, then to:

**Page 12 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Craig Bartschi
8095 E. Executive Ave.
Nampa, Idaho 83687

with a copy to:

Justin May
Johnson May Law
199 N. Capitol Blvd. Ste 200
Boise, ID 83702

Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the third day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by overnight delivery service.

**9.7    Attorney Fees.**  With respect to any dispute relating to this Agreement, or in the event that a suit, action, arbitration, or other proceeding of any nature whatsoever is instituted to interpret or enforce the provisions of this Agreement, including, without limitation, any proceeding under the U.S. Bankruptcy Code and involving issues peculiar to federal bankruptcy law or any action, suit, arbitration, or proceeding seeking a declaration of rights or rescission, the prevailing party shall be entitled to recover from the losing party its reasonable attorney fees, paralegal fees, expert fees, and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, as determined by the judge or arbitrator at trial, arbitration, or other proceeding, or on any appeal or review, in addition to all other amounts provided by law.

**9.8    Construction.**  The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Whenever the words "include" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Every covenant, term and provision of this Agreement is to be construed simply according to its fair meaning and not strictly for or against any party. The parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of the intent or interpretation arises, this Agreement must be construed as if drafted jointly by the parties, and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of authorship of any of the provisions of this Agreement.

**9.9    Counterparts.**  This Agreement may be executed in separate counterparts, each of which when executed and delivered will be an original, but all of which together will constitute one and the same Agreement.

**Page 13 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

**9.10    Electronically Transmitted Signatures.**  Electronic transmission of any signed original of this Agreement, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Agreement.

**9.11    Severability.**   If any provision of this Agreement is invalid or unenforceable in any respect for any reason, the validity and enforceability of any such provision in any other respect and of the remaining provisions of this Agreement will not be impaired.

**9.12    Further Assurances.**  Each party agrees to execute and deliver such other documents and to do and perform such other acts and things as the other party may reasonably request from time to time to carry out the intent and accomplish the purposes of this Agreement

**9.13    Time of Essence.**  Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

**9.14    No Third-Party Beneficiaries.**   Nothing in this Agreement, express or implied, confers any right, remedy, or claim of any nature whatsoever on any person other than the parties to this Agreement.

**9.15    Expenses.**  Each party will bear each such party's own expenses in connection with this Agreement and the Sale Transaction.

**9.16    Recitals and Exhibits.**  The Recitals and Exhibits to this Agreement are hereby made a part of this Agreement as if fully set forth in this Agreement.

**9.17    Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the State of Idaho without giving effect to any conflict-of-law principle that would result in the laws of any other jurisdiction governing this Agreement.

**9.18    Injunctive and Other Equitable Relief.**   The parties agree that the remedy at law for any breach or threatened breach by a party may, by its nature, be inadequate, and that the other party will be entitled, in addition to damages, to a restraining order, temporary and permanent injunctive relief, specific performance, and other appropriate equitable relief, without showing or proving that any monetary damage has been sustained.

**9.19    Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the parties exclusively in the United States Bankruptcy Court for the District of Idaho.

**9.20    Sussman Shank LLP Legal Representation.** The parties hereto, by their signatures hereto, hereby acknowledge, understand and agree that this Agreement was prepared by Sussman Shank LLP acting as legal counsel solely for the Plan Administrator; that Sussman Shank LLP has only provided legal advice to and

**Page 14 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

represented the Plan Administrator in this Sale Transaction; and that Buyer has been advised by Sussman Shank LLP to obtain the advice and assistance of separate, independent legal counsel to represent the interests of Buyer in this Sale Transaction and with respect to the content, terms and conditions of this Agreement, and Buyer has been afforded opportunity to do so.

**IN WITNESS WHEREOF,** the parties have entered into this Agreement effective as of the Effective Date.

**SELLER:**                                          **BUYER:**

PARKINSON SEED FARM, INC.,              CRAIG BARTSCHI,
an Idaho corporation                            an individual


By:_____          _____
        Matthew McKinlay,                        Craig Bartschi
        Plan Administrator

                                                BRYAN BARTSCHI,
                                                an individual


                                                _____
                                                Bryan Bartschi

**Page 15 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Exhibit A
Page 32 of 34

# EXHIBIT A
## ASSIGNMENT OF MEMBERSHIP INTEREST

For good and valuable consideration, effective as of 11:59 p.m. on _____, 2022, PARKINSON SEED FARM, INC., an Idaho corporation (the "Assignor"), acting by and through Matthew R. McKinlay (of CFO Solutions, L.C., dba Advanced CFO) in his capacity as the duly appointed Plan Administrator under that certain SummitBridge National Investments VI LLC's Amended Chapter 11 Plan of Liquidation entered December 11, 2019, in the matter of In re Parkinson Seed Farm, Inc., an Idaho corporation, Debtor, United States Bankruptcy Court, District of Idaho, Case No. 18-40412-JMM, does hereby sell, assign and transfer to CRAIG BARTSCHI, an individual, and BRYAN BARTSCHI, an individual (Craig Bartschi and Bryan Bartschi, together, the "Assignee"), all membership interest previously owned by Dirk Parkinson (the "Membership Interest") in DCB HOLDINGS, LLC, an Idaho member-managed limited liability company (the "Company"), which Dirk Parkinson claims to be a 51% Membership Interest in the Company as of the date of this Assignment of Membership Interest instrument, and Assignee does hereby accept such sale, assignment and transfer of the Membership Interest and does hereby agree to be bound by all of the terms, conditions and provisions of that certain Operating Agreement for the Company with an effective date of June 27, 2003, with respect to the Membership Interest. This Assignment of Membership Interest (this "Assignment") is made and entered into in connection with consummating the transactions under that certain Membership Interest Purchase and Sale Agreement dated _____, 2022 (the "Purchase and Sale Agreement") by and between Assignor and Assignee, and is subject to all of the terms and conditions of the Purchase and Sale Agreement. This Assignment may be executed in separate counterparts, each of which when executed and delivered will be an original, but all of which together will constitute one and the same instrument. Electronic transmission of any signed original of this Assignment, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Assignment.

[Remainder of page left intentionally blank]

**Page 16 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

Exhibit A
Page 33 of 34

**ASSIGNOR:**

PARKINSON SEED FARM, INC.,
an Idaho corporation


By:_____
         Matthew McKinlay,
         Plan Administrator

**ASSIGNEE:**

CRAIG BARTSCHI,
an individual


_____

Craig Bartschi



BRYAN BARTSCHI,
an individual



_____

Bryan Bartschi

**Page 17 of 17 – MEMBERSHIP INTEREST PURCHASE AND SALE AGREEMENT**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement is made on this ___ day of December, 2022, by and between Matthew McKinlay, Plan Administrator for Reorganized Debtor Parkinson Seed Farm, Inc., ("Administrator"), Craig Bartschi ("Craig"), Bryan Bartchi ("Bryan," with Craig the "Bartschis"), DCB Holdings, LLC, ("DCB"), and Idaho Springs Water Company, LLC ("Idaho Springs," together with the Administrator, the Bartschis, and DCB, the "Parties").

## RECITALS

WHEREAS, the Administrator has agreed to sell and Bartschi has agreed to buy certain membership interests in DCB and Idaho Springs (the "Membership Interests") pursuant to certain Membership Interests Purchase and Sale Agreements executed on the same date as this Settlement Agreement;

WHEREAS, as part of the sale of the Membership Interests, the Parties wish to resolve all potential disputes between and among them;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

1.  **Definitions**

    A.    "Administrator Related Persons" shall mean the Administrator, Reorganized Debtor Parkinson Seed Farm, Inc., the Bankruptcy Estate of Parkinson Seed Farm, Inc., and all persons the Administrator is authorized to act for in connection with his role as Administrator for the Bankruptcy Estate of or for the Reorganized Debtor Parkinson Seed Farm, Inc., including, any creditors and claimants and all others who may claim through the Administrator.

    B.    "Bartschi Related Persons" shall mean the Bartschis, DCB, and Idaho Spring's predecessors, successors, assigns, parent corporations, subsidiaries, affiliates, holding companies, divisions, unincorporated business units, joint venturers, partners, insurers, officers, directors, shareholders, managers, employees, agents, servants, representatives, officials, attorneys, associates, and trustees.

    C.    "Claims" shall mean claims, counterclaims, demands, actions, causes of action, debts, liabilities, damages, costs, fees, expenses, rights, duties, obligations, liens, petitions, suits, losses, controversies, executions, offsets and sums, of any kind or nature, whether direct or indirect, liquidated or unliquidated, contingent or actual, in law or equity, known or unknown, suspected or unsuspected, or of whatever type or nature.

2.  **Release**

    A.    In consideration of the transfer of the sale of the Membership Interests, the Administrator and the Administrator Related Persons and the Bartschis, DCB, Idaho Springs and

the Bartschi Related Persons hereby mutually release, remise, and forever discharge each other from any and all Claims.

3.      **Subject to Notice and Court Approval**

This Agreement is subject to notice to creditors in the Parkinson Seed Farm Chapter 11 case, Case No. 18-40412, and approval of the United States Bankruptcy Court.  In the event court approval of the settlement is not obtained, this Agreement shall be null and void and of no further force or effect.

4.      **Representations and Warranties**

The Parties acknowledge the following:

a.      The only representations of law or fact on which they have relied are expressly set forth in this Settlement Agreement and the Membership Interests Purchase and Sale Agreements between the Administrator and the Bartshcis entered into on even date with this Settlement Agreement. They disclaim any reliance in executing the Settlement Agreement on any representations not contained herein or in the Membership Interests Purchase and Sale Agreements, and no other representations or inducements by any other Party, any other Party's attorney, agent or representative, or any other individual or entity, have caused them to execute the Settlement Agreement;

b.      the Parties had the opportunity to seek and rely upon the advice of their counsel in the negotiation and execution of this Settlement Agreement;

c.      the Parties subsequently may discover facts different from or in addition to those now known or believed to be true regarding the subject matter of this Settlement Agreement, and agree that this Settlement Agreement shall remain in full force and effect notwithstanding the existence or discovery of any such different or additional facts; and

d.      the Parties mutually drafted this Settlement Agreement and therefore this Settlement Agreement shall not be construed more strictly against any Party.

5.      **Merger, Integration and Amendment**

The Parties acknowledge that this Settlement Agreement contains the entire agreement of the Parties, that all prior oral or written statements, representations, and covenants are merged into this Settlement Agreement, and that any other agreements not expressly stated herein are void and have no further force and effect.  The Parties agree that the Settlement Agreement may not be amended or modified except by a subsequent, written agreement executed by all of the Parties.

6.      **No Admission of Liability**

Exhibit B
Page 2 of 4

The Parties agree that this Settlement Agreement, its terms and/or the Parties' negotiations of it shall not constitute or be construed as an admission by any Party of any liability, fault, or wrongdoing of any kind whatsoever. This Settlement Agreement or any of its terms shall not be offered as or received into evidence in any pending or future civil, criminal or administrative proceeding or action against any Party hereto in any court, administrative agency or other tribunal, for any purpose whatsoever, except as may be necessary to enforce or to effectuate the terms of this Agreement.

7.    **Notice To Parties**

In the event that notice to one of the Parties must be provided under the terms of this Settlement Agreement, this Settlement Agreement is satisfied and notice is deemed provided by sending the required notice and/or documents and materials via certified U.S. Mail, with postage prepaid, to the respective addresses:

    a.    For Administrator:        Sussman Shank LLP
                                        Attn: Jeff Misley
                                        1000 S.W. Broadway, Suite 1400
                                        Portland, OR  97205
                                        jmisley@sussmanshank.com

    b.    For Bartschis, DCB, and Idaho Springs:    Johnson May
                                          Attn: J. Justin May
                                        199 N. Capitol Boulevard
                                        Boise, Idaho 83702
                                        jjm@johnsonmaylaw.com

9.    **Governing Law**

This Settlement Agreement shall be subject to, governed by, and construed and enforced pursuant to the laws of the state of Idaho, without regard to conflict of law rules.

10.    **Severability**

The Parties agree that if any court or tribunal of competent jurisdiction determines that any provision of this Settlement Agreement is illegal, invalid or unenforceable, such illegal, invalid or unenforceable provision shall be severed from the Settlement Agreement and the remainder of this Settlement Agreement shall not be affected thereby and shall remain in full force and effect.

11.    **Counterparts**

This Settlement Agreement may be executed in one or more counterparts, including with an electronic signature, all of which taken together shall constitute one instrument. The Parties

3

agree that copies of the Settlement Agreement (including faxed, emailed and/or other electronic copies) shall be accepted as originals.

**THE UNDERSIGNED HAVE READ THE FOREGOING SETTLEMENT AGREEMENT, FULLY UNDERSTAND IT, AND AGREE TO THE TERMS SET FORTH HEREIN.**

**MATTHEW MCKINLAY, PLAN ADMINISTRATOR
FOR REORGANIZED DEBTOR PARKINSON SEED FARM, INC**.

By: _____

Title: _____

**DCB HOLDINGS, LLC**

By: _____

Title: _____

**IDAHO SPRINGS WATER COMPANY, LLC**

By: _____

Title: _____

**CRAIG BARTSCHI**

_____

**BRYAN BARTSCHI**

_____

*24172-006\PSF - BARTSCHI DCB ISWC SETTLEMENT AGREEMENT (04111233);2

4

Exhibit B
Page 4 of 4

1  <u>CERTIFICATE OF SERVICE</u>

2  I, Janine E. Hume declare as follows:

3  I am employed in the County of Multnomah, state of Oregon; I am over the age of eighteen

4  years and am not a party to this action; my business address is 1000 S.W. Broadway, Suite 1400,

5  Portland, Oregon 97205-3089, in said county and state.

6  I certify that on January 5, 2023, I served, **via first class mail**, a full and correct copy of

7  the foregoing **NOTICE OF PLAN ADMINISTRATOR'S MOTION FOR ORDER**

8  **AUTHORIZING SALE OF MEMBERSHIP INTERESTS FREE  AND CLEAR OF ALL**

9  **LIENS, CLAIMS, AND INTERESTS AND APPROVING SETTLEMENT AGREEMENT**

10  on the parties of record, addressed as follows:

11  **See attached mailing matrix.**

12

13  I also certify that on January 5, 2023, I served the above-referenced document(s) on all

14  ECF participants as indicated on the Court's Cm/ECF system.

15  I swear under penalty of perjury that the foregoing is true and correct to the best of my

16  knowledge, information, and belief.

17  Dated: January 5, 2023.

18

19  */s/ Janine E. Hume*

20  Janine E. Hume, Legal Assistant

21

22  **\*24172-006\CERTMASTER (JANINE) (03397730);1**

23

24

25

26

CERTIFICATE OF SERVICE - Page 1

```
Label Matrix for local noticing        Ally Bank                              Ally Servicing LLC
0976-4                                  PO Box 130424                          c/o McCarthy & Holthus, LLP
Case 18-40412-JMM                       Roseville, MN 55113-0004               702 W. Idaho St., Suite 1100
District of Idaho                                                              Boise, ID 83702-8902
Pocatello
Thu Jan  5 12:31:36 MST 2023

Alma Steinman                           American Express National Bank         Aristocrat Farms, a general partnership
1134 North 3500 East                    c/o Becket and Lee LLP                 c/o Robert J. Maynes, Esq.
Ashton, ID 83420-5627                   PO Box 3001                            PO Box 3005
                                        Malvern, PA 19355-0701                 Idaho Falls, ID 83403-3005

Aristocrat Farms, a general partnership BASIN BUSINESS JOURNAL                 BioWest Ag Solutions
c/o Robert J. Maynes                    PO BOX 910                             4116 Skyway Strrt
PO Box 3005                             MOSES LAKE, WA 98837                    Caldwell, ID 83605
Idaho Falls, ID 83403-3005

Brian Loosli                            Richard Brown                          Jeffrey D Brunson
3127 E 1100 N                           Silvercreek Realty Group               Beard St. Clair Gaffney PA
Ashton, ID 83420-5604                   2002 Jennie Lee Drive                  2105 Coronado Street
                                        Idaho Falls, ID 83404-7000             Idaho Falls, ID 83404-7495

C & B Operations, LLC                   C & B Operations, LLC                  ComPeer Mortgage
1247 South 12th West                    30965 US Highway 212                   PO Box 4459
Rexburg, ID 83440-5049                  Gettysburg, SD 57442-8709              Mankato, MN 56002-4459

Compeer Financial                       Compeer Financial FLCA                 Mark V. Cornelison
Givens Pursley LLP                      c/o Randall A. Peterman                Holden, Kidwell, Hahn & Crapo, P.L.L.C.
c/o Randall A. Peterman                 Givens Pursley LLP                     PO Box 50130
601 W. Bannock St.                      601 W. Bannock St.                     Idaho Falls, ID 83405-0130
P.O. Box 2720                           Boise, ID 83702-5919
Boise, ID 83701-2720

William Reed Cotten                     William G Cross                        Michael Danielson
ROBINSON & COTTEN                       Markus Williams Young & Hunsicker LLC  Benoit, Alexander, Harwood, High & Molle
P.O. Box 396                            1700 Lincoln Street                    PO Box 366
616 Fremont Street                      Suite 4550                             Twin Falls, ID 83303-0366
Rupert, ID 83350-1611                   Denver, CO 80203-4509

Karl R Decker                           (p)DEERE CREDIT SERVICES  INC          Deere & Company
 Holden, Kidwell, Hahn & Crapo, P.L.L.C. ATTN LITIGATION & RECOVERY DEPARTMENT 23176 Network Place
POB 50130                               PO BOX 6600                            Chicago, IL 60673-1231
Idaho Falls, ID 83405-0130             JOHNSTON IA 50131-6600

Deere Credit, Inc.                      Diversified Financial Serv             Diversified Financial Services, LLC
23176 Network Place                     14010 FNB Parkway, 400                 14010 First National Bank Pkwy, Ste 400
Chicago, IL 60673-1231                  Omaha, NE 68154-5232                   Omaha, NE 68154-5232

Hyrum Dean Erickson                     Fall River Rural Electric              Ryan Mayes Fawcett
Rigby Andrus Rigby Law, PLLC            1150 North 3400 East                   P.O. Box 700
25 N. 2nd E.                            Ashton, ID 83420-5624                  Boise, ID 83701-0700
P.O. Box 250
Rexburg, ID 83440-0250
```

First National Acceptance Company
241 E Saginaw
East Lansing, MI 48823-2753

c/o Ryan M. Fawcett First National Acceptanc
Skinner Fawcett LLP
PO Box 700
Boise, ID 83701-0700

First National Bank
% Alliance Title & Escrow
380 E Parkcenter Blvd #100
Boise, ID 83706-3963

First National Bank
PO Box 980
East Lansing, MI 48826-0980

Joshua Gallagher Flood
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland
Portland, OR 97205-3066

Golden West Irrigation
PO Box 488
Rexburg, ID 83440-0488

Daniel C Green
POB 1391
Pocatello, ID 83204-1391

GroupAg LLC
PO Box 981
Rexburg, ID 83440-0983

Scott Wesley Hulbert
Idaho Office of the Attorney's Office
954 West Jefferson
Boise, ID 83702-5436

Idaho State Tax Commission
Bankruptcy Division
P.O. Box 36
Boise, ID 83722-2302

Internal Revenue Service
Centralized Insolvency Dept
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Insolvency Division
550 West Fort Street Ste 300
Boise, ID 83724-0105

Interstate Billing Service, Inc.
P.O. Box 2250
Decatur, AL 35609-2250

Jeffrey D. Brunson
Beard St. Clair Gaffney PA
955 Pier View Dr.
Idaho Falls, ID 83402-4918

Jeppesen Brothers Ranch
c/o Robert J. Maynes
PO Box 3005
Idaho Falls, ID 83403-3005

Jeppesen Brothers Ranch
1075 N. 9th E.
Rexburg, ID 83440-5108

John Steinman Estate
1134 North 3500 East
Ashton, ID 83420-5627

Ronald Jones
Silvercreek Realty Group
3717 North 2544 East
Twin Falls, ID 83301-1003

Kenworth Sales
2555 Garrett Way
Pocatello, ID 83201-6126

Kenworth Sales Company
PacLease
2125 South Constitution Blvd
West Valley City, UT 84119-1219

R Ron Kerl
POB 4229
Pocatello, ID 83205-4229

Key Bank Nat'l Association
ID-MM- Blackfoot CBC
15 North Ash
Blackfoot, ID 83221-2102

Key Equipment Finance
1000 South McCaslin Blvd
Superior, CO 80027-9437

KeyBank NA
% Sheila R. Schwager
PO Box 1617
Boise, ID 83701-1617

KeyBank NA
ATTN: Bankruptcy Department
PO Box 94968
Cleveland, OH 44101-4968

KeyBank NA
Commercial Loan Dept
PO Box 94525
Cleveland, OH 44101-4525

KeyBank National Association
Hawley Troxell Ennis & Hawley, LLP
877 Main Street, Suite 1000
Boise, ID 83702-5884

KeyBank National Association
c/o Sheila R. Schwager
Hawley Troxell Ennis & Hawley, LLP
877 Main Street, Suite 1000
Boise, ID 83702-5884

KeyBank, NA
702 West Idaho Street
Boise, ID 83702-8901

Jay A Kohler
482 Constitution Wy #313
Idaho Falls, ID 83402-3543

Henri W. LeMoyne
LeMoyne Realty and Appraisals
POB 5225
Twin Falls, ID 83303-5225

David R Levin
Huber, Erickson & Bowman LLC
375 S 300th W
Salt Lake City, UT 84101-1704

Robert D Long
Jordan & Co. CPA's
109 N Arthur, Ste 400
Pocatello, ID 83204-3105

Brian Loosli
3310 US 20
Ashton, ID 83420

Madison County Implement
PO Box 155
Rexburg, ID 83440-0155

James T Markus
Markus Williams Young & Hunsicker LLC
1775 Sherman Street
Suite 1950
Denver, CO 80203-4350

Maupin Welding
1217 South Railroad Avenue
PO Box 32
Rexburg, ID 83440-0032

Max D. Parkinson & Sons
1185 North 3500 East
Ashton, ID 83420-5627

James K Miersma
McCarthy Holthus LLP
108 1st Ave S.
Suite 300
Seattle, WA 98104-2104

Milestone
395 West Highway 39
Blackfoot, ID 83221-5600

Rhett Michael Miller
Parsons, Smith, Stone, Loveland and Shir
P.O. Box 910
Burley, ID 83318-0910

Jeffrey C Misley
Sussman Shank LLP
1000 SW Broadway #1400
Portland, OR 97205-3089

John T Morgan
Office of United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111-3402

Jason Ronald Naess
DOJ-UST
550 West Fort St.
Ste 698
Boise, ID 83724-0101

Necternal, LLC
PO Box 2270
Idaho Falls, ID 83403-2270

David Wayne Newman
OFFICE OF THE US TRUSTEE US DEPT
405 South Main Street, Suite 300
Salt Lake City, UT 84111-3402

Parkinson Seed Farm, Inc.
PMB 320
13601 W McMillan Rd
Ste 102
Boise, ID 83713-2071

Randall A Peterman
Givens Pursley LLP
601 W. Bannock St.
P.O. Box 2720
Boise, ID 83701-2720

Rain for Rent
3615 Ririe Highway
Idaho Falls, ID 83401-5713

Gary L Rainsdon
POB 506
Twin Falls, ID 83303-0506

Reinke Grain Co., Inc.
1631 N 3600 E
Ashton, ID 83420-5213

Brent T Robinson
POB 396
Rupert, ID 83350-0396

Rudolf Steinman
1134 North 3500 East
Ashton, ID 83420-5627

Sheila Rae Schwager
Hawley Troxell Ennis & Hawley, LLP
877 Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617

Lorinda Seamons
Hunter of Homes, LLC
10195 West Beacon Light Road
Star, ID 83669-5109

Selco Service Corporation
1000 South McCaslin Blvd
Superior, CO 80027-9437

Snake River Farmers Assoc
PO Box 807
Heyburn, ID 83336-0807

Spudnik Equipment Co.
P.O. Box 1045
Blackfoot, ID 83221-1045

Alma Steinman
P.O. Box 359
Ashton, ID 83420-0359

Rudolf Steinman
P.O. Box 359
Ashton, ID 83420-0359

Susan Steinmann
P.O. Box 359
Ashton, ID 83420-0359

John Steinmann Estate
P.O. Box 359
Ashton, ID 83420-0359

Steinmann Farms
P.O. Box 359
Ashton, ID 83420-0359

Steinman Farms
1134 North 3500 East
Ashton, ID 83420-5627

Jesse C Stewart
Sussman Shank LLP
1000 S.W. Broadway
Suite 1400
Portland, OR 97205-3089

SummitBridge National Investments IV LLC
c/o James T Markus
1700 Lincoln Street, Suite 4550
Denver, CO 80203-4509

c/o Jason Naess SummitBridge National Invest
P.O. Box 910
Burley, ID 83318-0910

Susan Steinmann
1134 North 3500 East
Ashton, ID 83420-5627

Toyota Motor Credit Corporation
14841 DALLAS PARKWAY, SUITE 425
DALLAS, TX 75254-8067

Toyota Motor Credit Corporation
PO Box 9013
Addison, Texas 75001-9013

U. S. Attorney's Office
1290 W Myrtle St
Ste 500
Boise, ID 83702-6950

US Trustee
Washington Group Central Plaza
720 Park Blvd, Ste 220
Boise, ID 83712-7785

Valley Agronomics LLC
520 East Moody Road
PO Box 459
Rexburg, ID 83440-0459

Jeremy Vaughn
Stephan, Kvanvig, Stone & Trainor
P.O. Box 83
Twin Falls, ID 83303-0083

Walters & Walters, A Joint Venture
c/o Robert J. Maynes, Esq.
PO Box 3005
Idaho Falls, ID 83403-3005

Walters Osgood Farms & Kelley & Sons, Joint
c/o Robert J. Maynes
PO Box 3005
Idaho Falls, ID 83403-3005

Walters Osgood Farms and Kelly & Sons, Joint
c/o Robert J. Maynes
PO Box 3005
Idaho Falls, ID 83403-3005

Walters and Walters, A Joint Venture
c/o Robert J. Maynes
PO Box 3005
Idaho Falls, ID 83403-3005

Wes L. Parkinson, Trustee of the QTIP Trust
4415 Jud Street
Rexburg, ID 83440-4379

William Stuart Tabard Wood
Sussman Shank LLP
1000 SW Broadway, Ste 1400
Portland, OR 97205-3089

c/o James T. Markus
Markus Williams Young LLC
1775 N Sherman St. Suite 1950
Denver, CO 80203-4350

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Deere & Company
6400 N.W. 86th Street
Johnston, IA 50131

(d)Deere Credit, Inc
John Deere Financial
6400 NW 86th St.
PO Box 6600
Johnston, IA 50131

(d)John Deere Financial
Deere Credit, Inc.
PO Box 6600
Johnston, IA 50131-6600

(d)John Deere Financial, f.s.b.
6400 NW 86th Street
PO BOX 6600
Johnston, IA 50131

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

(u)Deere Credit, Inc.

(u)Kenworth Sales Company

(u)Marilyn Parkinson

(u)Matthew R McKinlay

(u)Robert Morrison
Robert Morrison Appraisal, LLC

(du)Marilyn Parkinson

(u)Roger Parkinson

(u)Plan Administrator (Matt McKinlay, Advance

(u)QTIP Trust

(d)Gary L Rainsdon
POB 506
Twin Falls, ID 83303-0506

(u)Reinke Grain Company., Inc.
P.O. Box 810
Ashton

(d)Brent T Robinson
POB 396
Rupert, ID 83350-0396

(u)Roger Parkinson, Trustee of the QTIP Trust

(d)Selco Service Corporation
1000 South McCaslin Boulevard
Superior, CO 80027-9437

(u)Spudnik Equipment Company

End of Label Matrix
Mailable recipients   110
Bypassed recipients    16
Total                 126